[S. F. No. 20122. In Bank. May 24, 1960.]

Estate of ERNEST J. TORREGANO, Deceased. GLADYS TORREGANO STEVENS, Appellant, v. ALFRED TORREGANO, Respondent.

*Assigned by Chairman of Judicial Council.

Bergen Van Brunt for Appellant.

Henry B. Nathan as Amicus Curiae on behalf of Appellant.

Wallace, Garrison, Norton & Ray and Maynard Garrison for Respondent.

PETERS, J.—Plaintiff appeals from a decree dismissing her petition for determination of heirship. The trial court held that, as a matter of law, plaintiff is not a pretermitted heir of Ernest J. Torregano, deceased.

Torregano, a San Francisco attorney, died on January 18, 1954. His will was dated June 25, 1947. It was duly admitted to probate on February 5, 1954. By the terms of that will decedent left the bulk of his estate to his brother, Alfred Torregano, the defendant herein. Plaintiff was not specifically named in the will, nor was she mentioned in any manner unless the trial court was correct in holding that she is a person who is included in the general class mentioned in clause Thirteenth of the will. Clauses Second, Thirteenth and Fourteenth (the only portions of the will involved in this appeal) read as follows:

"SECOND: I declare that I am a widower and that I have no children, issue of my marriage; that my deceased wife's name was Pearl C. Torregano; that my entire estate is separate property. . . .

"THIRTEENTH: I give, devise and bequeath to any person or persons who may contest this my Last Will and Testament, or assert any claim to share my estate by virtue of relationship or otherwise the sum of One Dollar ($1.00) each in settlement of their said claim or claims.

"FOURTEENTH: I give, devise and bequeath all the rest and residue of my estate of whatsoever kind or nature and wheresoever situate which I may die seized and possessed of, to my dearly beloved brother, ALFRED TORREGANO, . . ." There follows provisions for contingent residuary beneficiaries in the event of Alfred's prior death.

On January 8, 1957, the estate then being in the process of probate, plaintiff filed a "Petition for Decree Determining That Gladys Torregano Stevens is a Pretermitted Heir," therein alleging that she is the lawful child of decedent and Viola Perrett, that she was not provided for by settlement or advancement, that she was not mentioned in decedent's will, that such omission was unintentional, and that she is entitled to the entire estate under the provisions of Probate Code, sec-

tions 90 and 91.[1] On February 1, 1957, defendant filed his statement as beneficiary in opposition to plaintiff's petition, and subsequently filed a demand for a jury on the hearing of the petition.[2]

On April 18, 1957, defendant filed motions for summary judgment and dismissal on the grounds that the petition does not state facts sufficient for a determination that plaintiff is a pretermitted heir, that testator's will provides for her in the sum of $1.00, and that the petition is uncertain, unintelligible and ambiguous.[3] Plaintiff filed two affidavits in opposition alleging, among other things, the facts that she is the legitimate daughter of decedent and Viola Perrett Torregano, who were husband and wife, and that she is the sole surviving child of decedent. After argument, both motions were denied by the law and motion department on May 14, 1957.

On May 15th the matter came on for trial, by jury, in another department of the same court. Before any testimony was taken defendant moved the court, orally, for a trial of special issues, and also for judgment on the pleadings. Both

---

[1]Section 90 of the Probate Code reads: ''When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate.''

For the purposes of this appeal, the provisions of section 91 are immaterial.

[2]Probate Code, section 1080, provides for the filing of a petition such as was filed herein by plaintiff, for the written statement filed by defendant, and for a hearing on the issues thus raised. No other pleadings are required. Section 1081 provides that the factual issues be tried by a jury, unless waived.

[3]The sole specification of uncertainty or ambiguity was that it could not be determined from the petition whether plaintiff was a legitimate, illegitimate or adopted daughter. Whether or not such fact was material, plaintiff cured the claimed defect by her answering affidavits. The claim that the petition did not state facts sufficient for a determination that plaintiff is a pretermitted heir is answered by the allegations of the petition framed in the language of section 90 of the Probate Code, including the allegation that the omission of provision for her was unintentional. Had defendant further specified an ambiguity or uncertainty in the failure to allege how or in what manner the omission was unintentional, he might have raised a valid point of pleading, but in such event plaintiff would have had an opportunity to amend. Furthermore, the will was not then before the court, leaving no possibility to test the pleading as a matter of law. For these reasons there was no error in the order denying the motion of April 18th. By the time the court acted on the motion of May 15th (see below) all of the evidence was in, and the question raised was no longer a mere matter of pleading, but one of legal and factual issues raised by that evidence.

motions were ordered submitted, and the matter proceeded to trial. Both parties produced witnesses and documentary evidence which, because of the nature of the ultimate action of the trial court, need not be set forth in detail. It is sufficient for the purposes of this opinion to state that plaintiff produced evidence from which the jury, if it believed the evidence, could have found that the following facts were true:

Testator, Ernest J. Torregano, was born November 21, 1882, a member of a fairly large Negro family. During 1902 or 1903 he married Viola Perrett, a member of his minstrel troupe, and brought her to live at his mother's house in New Orleans, Louisiana. On February 7, 1904, plaintiff, Gladys Torregano Stevens, was born the issue of such marriage, in the home of her grandmother (decedent's mother). When plaintiff was less than a year old testator (having established his family in a separate residence) took a position as a porter on a railroad train running between New Orleans and San Francisco, California. For the next year or more he continued in such work, residing with his wife and child during the periods of stop-over in New Orleans. He then found permanent work in San Francisco, but did not immediately terminate his infrequent visits to his family. Some time after the earthquake and fire of 1906 he took up the study of law, and "commenced to pass for white." During this period, he sent for his brother Alfred, presumably the only other member of his family so capable of "passing," and the two of them ultimately succeeded. Testator ultimately became a successful member of the bar in San Francisco. Prior to 1915 testator had ceased his infrequent visits to New Orleans, but maintained contact with various members of his family by correspondence. During this period, he maintained two addresses in San Francisco, one for a "white" establishment and the other as an address to receive his mail from his colored family. During the year 1915 (or thereabouts), testator's mother and his half-brother, Edgar, visited him in San Francisco. On that occasion testator's mother told him that his wife and daughter, the plaintiff, were dead. On her return to New Orleans, testator's mother told the wife and child that testator was dead. On that date plaintiff was a child of tender years, incapable of producing issue, which testator then knew. The testator never had any other issue. After the date of the visit from his mother there was no further contact (by mail or otherwise) between testator and his wife (Viola) or plaintiff, although there was subsequent contact between testator

and at least one of his sisters. On March 15, 1917, testator married Pearl C. Bryant, of Oakland, California, the marriage certificate indicating that he and his parents were white.[4] In 1922 Viola remarried (presumably relying upon the misinformation given to her by testator's mother). Pearl died prior to June 25, 1947.

The will was introduced into evidence. From all of the foregoing facts, including the subsequent remarriage, the fact that testator was a successful practicing attorney who was versed in the law, and the fact that the will made no specific mention of plaintiff, and, in fact, inferred lack of any issue, there is no doubt that a jury could have found—if such evidence is admissible and relevant under the law—that testator, when executing his will, believed plaintiff to have been dead for many years, and that she had died at a time when she could not possibly have had issue.

Much of the evidence upon which the foregoing statement is based was received over the objection of defendant. He took the attitude that extrinsic evidence was inadmissible. The trial court admitted all of the evidence subject to such objection, which it took under submission along with the motions made at the commencement of the trial.

After all the evidence had been received, but prior to giving the case to the jury, the trial judge entered a minute order and a memorandum opinion, both granting defendant's "motion to dismiss."[5] The court then entered its decree, by the terms of which it held, in effect, that, as a matter of law, plaintiff is not a pretermitted heir of testator, and is entitled as a claimant to receive but the sum of $1.00 as mentioned in paragraph Thirteenth of testator's will. It also held that defendant is entitled to the residue of the estate, after payment of all specific bequests. From this decree, and from the denial of her motions for new trial and for order vacating the decree, plaintiff has appealed.

---

[4] No inference of bigamy is to be inferred by reason of this subsequent marriage. No evidence was offered in rebuttal of the testimony from which the jury may have found that testator believed Viola to be dead. On the contrary a legal presumption operates in favor of absence of any intent to commit bigamy (Code Civ. Proc., § 1963, subds. 1 and 33). This presumption, together with the fact that he remarried within two years of the date that his mother told him that his wife and child were dead, is convincing evidence that testator believed his mother's statement to be true.

[5] The submitted motion, made orally at the start of the trial, was actually termed a "motion for judgment on the pleadings," but we do not deem this inconsistency between motion and order to be of any legal significance herein.

The reasoning behind the decree (both as stated by the trial court in its opinion, and as contended by respondent on this appeal) is that even though Probate Code, section 1081, provides for a trial of the factual issues by jury, when the rights of the parties are wholly determinable as a matter of law, the court must remove the case from the jury, and make such final determination as a matter of law. It is then contended that this case presents solely a question of law for the reason that extrinsic evidence is inadmissible to prove testator's intent, and that the language of the will, standing alone, indicates an intention to omit provision for his daughter. In urging this theory, both the trial court and respondent have relied upon the language of several California decisions interpreting Probate Code, section 90. These authorities are discussed below. Although it is true that the language found in some of those cases appears to hold as respondent claims, when analyzed they are found not to be applicable to the facts of this case.

We agree with the claim that the court acts properly in taking the case from the jury when the issues are determinable by a sole question of law. On the other hand, it is not contended that the court may so act if the case requires determination of one or more factual issues. The single question thus posed in this case is whether, under all of the circumstances presented, there were factual issues which required the case to go to the jury. We are of the opinion that this question must be answered in the affirmative. We are of the further opinion that such determination requires conclusions which are, to some extent, matters of first impression.

Our first such conclusion is that extrinsic evidence is admissible to prove a testator's *lack* of intent to omit from his will any provision for a presumptive heir.

In contending that evidence *dehors* the will was not admissible herein, respondent relies upon that portion of Probate Code, section 90, which states that a child who is not provided for succeeds to a portion of the estate "unless it appears from the will that such omission is intentional." The quoted phrase specifically bars the introduction of evidence, other than that found on the face of the will, in proving that testator intentionally omitted provision for his child. The significant fact is that the code section makes no reference to the method of proving *lack* of intent to exclude a child. Respondent places his main reliance upon various cases which have interpreted section 90 (or its predecessor statutes), and which

have included language to the effect that the question of *"whether or not"* the testator intended to omit provision for an unnamed child must be determined solely from the face of the will, and without resort to extrinsic evidence (*Rhoton* v. *Blevin,* 99 Cal. 645, 647 [34 P. 513]; *Estate of Trickett,* 197 Cal. 20 [239 P. 406]; *Estate of Cochems,* 112 Cal.App.2d 634, 637 [247 P.2d 131]; *Estate of Fernstrom,* 157 Cal.App.2d 380 [321 P.2d 25], and others). A reading of these cases demonstrates that, in spite of the language used in the respective opinions, not one was a case wherein the claiming pretermitted heir offered and was denied the right to introduce extrinsic evidence in order to prove that the omission was unintentional.[6] Quite to the contrary, there are several California cases in which claiming pretermitted heirs were allowed to introduce evidence *dehors* the will for such purpose (*Estate of Ross,* 140 Cal. 282 [73 P. 976]; *Estate of Carroll,* 138 Cal. App.2d 363 [291 P.2d 976]; *Estate of Percival,* 138 Cal.App. 2d 494 [292 P.2d 63]). It is also true that the majority of California cases which have denied to the *proponent* the right to prove intent *dehors* the will did so in language which indicated that, if called upon to pass on the question, the court would have allowed recourse to extrinsic evidence in order to prove *lack* of intent. In *Matter of Estate of Garraud,* 35 Cal. 336, the court said, at page 342: "It could not well appear from the will itself that a mistake had been committed, nor that accident had caused the testator to omit his children." Similarly, in *Estate of Axcelrod,* 23 Cal.2d 761 [147 P.2d 1], which turned upon another point, there is an inference (at p. 766) that extrinsic evidence would have been received had it been offered. *Estate of Frinchaboy,* 108 Cal.App.2d 235 [238 P.2d 592], directly held that extrinsic evidence is always admissible if not offered for the limited purpose of showing testator's intent to omit provision for a presumptive heir.

Upon a review of all of the California cases dealing with this subject, it will be discovered that no appellate decision in this state has ever held, in a case where the point was involved, that extrinsic evidence is inadmissible for the purpose of proving *lack* of intent to omit provision for a presumptive heir. Consideration of the pertinent cases demonstrates how the ambiguous phraseology ("whether or not" the testator intentionally omitted his child) first came to appear in the decisions. Prior to the decision in *Rhoton* v. *Blevin, supra,* 99

_____

[6]Including the more recent *Estate of Nessel,* 164 Cal.App.2d 798 [331 P.2d 205], which used the same language at page 804.

Cal. 645, the opinions held that the limitation on the use of extrinsic evidence only extended to attempts to prove the testator's affirmative intent. Nothing was said in any of the cases as to the method of proving lack of intent. (See *Payne* v. *Payne,* 18 Cal. 291; *Matter of Estate of Garraud,* 35 Cal. 336; *In re Stevens,* 83 Cal. 322 [23 P. 379, 17 Am.St.Rep. 252].) But in *Rhoton* v. *Blevin, supra,* there first appears the language that: "We must look to the face of the will itself to determine the question *whether or not* the petitioners were intentionally omitted therefrom by the testator." (P. 647; emphasis added.) There was no good reason in that case for the court to use the emphasized phrase. The appeal was taken from a judgment after a demurrer was overruled, and the defendant refused to answer. No evidence of testator's intent had been offered, and *the will was the only evidence that the court had before it.* The decision did not involve the question of the admissibility of evidence at all, and the above quotation referred only to a situation where the appellate court was faced with the lack of any evidence. As if to emphasize this limitation that the quoted phrase was not applicable to a case where evidence was offered, the same court, two years after the date of the Rhoton opinion, decided the case of *In re Salmon,* 107 Cal. 614 [40 P. 1030, 48 Am.St.Rep. 164]. In passing upon the point the court phrased the question to be whether extrinsic evidence "can be resorted to for the purpose of determining whether the omission . . . was intentional on the part of the testator . . ." (p. 615). The ambiguous phrase "whether or not" was not used, for it was no longer proper to the case then before the court. Unfortunately, several later cases, in passing upon *proponent's* right to offer extrinsic evidence, used the "whether or not" language of the Rhoton opinion. But such cases did not determine any question involving the use of extrinsic evidence to prove lack of intent, and the unfortunate phraseology was not germane to the decisions, and is disapproved.

Although no California case has directly barred the use of extrinsic evidence to prove lack of intent to omit provision for testator's child, it is also true that we have found no California authority expressly authorizing its use for such purpose. The cases cited above, which allowed the use of extrinsic evidence by claimant, or which inferred the propriety thereof, did not discuss the competency of that evidence, but simply assumed it to be admissible. Therefore, the point is one of first impression.

 From a standpoint of reason and common sense, it is obvious, by very definition, that a pretermission can exist only through oversight. It occurs only when there has been an omission to provide, absent an intent to omit. As pointed out in *Matter of Estate of Garraud, supra,* the mistake or accident which caused the testator to omit provision for his child cannot possibly appear from the will itself. Extrinsic evidence for this purpose must be contemplated by the statute. Otherwise pertermission could never be proven.

There are other grounds for holding that evidence of this type is admissible. Extrinsic evidence is always admissible for the purpose of proving the circumstances under which a will was executed (*Estate of Smith,* 145 Cal. 118, 123 [78 P. 369]; *Estate of Spreckels,* 162 Cal. 559 [123 P. 371]; *Estate of Pierce,* 32 Cal.2d 265 [196 P.2d 1]; Prob. Code, § 105).[7] In the instant case petitioner produced evidence of relationship and family circumstances from which the jury could have found that for some 32 years testator and his daughter each believed the other dead. Should the trier of fact accept that evidence as true, it could further find that the erroneous belief continued to and including the date of making the will. Such evidence is then part of the "circumstances" under which the will was executed, and thus admissible.

 Extrinsic evidence is also admissible to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear (Prob. Code, § 105; *Estate of Kurtz,* 190 Cal. 146 [210 P. 959]; *Estate of Frinchaboy,* 108 Cal.App.2d 235, 236 [238 P.2d 592]; *Estate of Kearns,* 36 Cal.2d 531, 537 [225 P.2d 218]; *Estate of Duke,* 41 Cal.2d 509, 515 [261 P.2d 235]—holding that the rule announced in *Estate of Kurtz* was correct although the application to the facts therein was questionable). In the instant case the testator declared: ". . . that I am a widower and that I have no children, issue of my marriage;" (clause Second). He also declared that his deceased wife's name was Pearl, and made no mention of a previous wife, or of any issue

---

[7]Probate Code, section 105, reads as follows: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."

by such. Granting appellant's right to offer evidence that she is testator's daughter, by a wife named Viola, a latent ambiguity immediately appears, which ambiguity must be resolved by recourse to extrinsic evidence.

It should also be pointed out that the several statutes protecting presumptive heirs against unintentional omission disclose a clear legislative intent that evidence *dehors* the will should be admissible to prove a reason or cause, other than intentional, for such omission. For example, the language of Probate Code, section 90, creates a pretermission unless an affirmative intent to disinherit appears on the face of the will. The Legislature therein refrained from expressing any limitation upon evidence to prove *lack of intent*. Probate Code, section 70, creates a presumption that a subsequent marriage revokes the will of a person who has not provided for a future spouse, unless the will shows an intention not to make such a provision. The section closes with the clause: ". . . and no other evidence to rebut the presumption of revocation can be received." Again the Legislature denied the *proponent* the right to prove intention *dehors* the will, without expressing any limitation upon proof of unintentional omission. Similarly, Probate Code, section 105, authorizes the use of extrinsic evidence for the purpose of clarifying ambiguities, but bars the admission of testator's declarations. If this section be applied to the problems presented in sections 101, 102 and 103 (requiring that the intentions of the testator shall control) it seems clear that the Legislature has intended, throughout, to bar only that method of proof which is easily susceptible to perjury, or which requires conjecture and speculation. In creating such a pattern of statutes, the Legislature has only codified the ordinary rules of evidence which bar the use of "suspect" evidence except in certain cases of necessity. This is why section 90 expressly denies the proponent the right to offer extrinsic evidence to prove *intentional omission*. Such proof would be tantamount to allowing parol declaration of intent to conflict with a written statement thereof. But such reason does not exist where the offeror of the evidence desires to show *lack of intent*. Of necessity, such must be proved by circumstances other than the testator's declaration of intent.

Appellant's entire case must rest on the contention that appellant was omitted from the will because the testator thought her dead. If true, that explains rationally his failure to provide for her, absent an intent to disinherit her. Since such a lack of intention could not appear from the face of the

will, she is entitled to prove such by resort to extrinsic evidence.

We now turn to the language of clause Thirteenth. By the terms of that clause testator left $1.00 "to any person or persons who may contest . . . or assert any claim . . . by virtue of relationship or otherwise . . ." The trial court held (and respondent contends) that this language includes appellant, as a matter of law. Such general language, referring as it does to a large class of persons, cannot be deemed, as a matter of law, necessarily to include a close relative who the testator mistakenly thought dead. This conclusion necessarily follows from a review of the history, objects and purposes of the pretermission statute, together with the basic rules of interpretation involved.

Since its origin as a state, California has continuously protected both spouse and children (and to some extent, grandchildren) from unintentional omission from a share in testator's estate. Such protection, unknown to the common law, has been provided by statute, commencing with the Acts of 1850, continued by various sections of the Civil Code, and today appearing in sections 70, 71, 90, 91 and 92 of the Probate Code. Thus the Legislature has indicated a continuing policy of guarding against the omission of lineal descendants by reason of oversight, accident, mistake or unexpected change of condition.

From 1850 to date the courts have announced certain well settled rules of construction applicable to the objects and interpretation of these statutes. Among these are the following:

(1) The sole object of these statutes is to protect children against omission or oversight "which not infrequently arises from . . . the peculiar circumstances under which the will is executed." (*Payne* v. *Payne*, 18 Cal. 291, 302.)

(2) Neither the pecuniary value, nor the lack thereof, which the child receives, has any effect upon the object of these statutes, the purpose being merely to prevent unintentional omission (*Estate of Callaghan*, 119 Cal. 571, 574 [51 P. 860, 39 L.R.A. 689] ; *Estate of Carter*, 49 Cal.App. 2d 251, 256 [121 P.2d 540]).

(3) Public policy requires that a testator remember his children at the time of making his will (*In re Barter*, 86 Cal. 441 [25 P. 15] ; *Estate of Ross*, 140 Cal. 282 [73 P. 976]).

■ (4) "It is the policy of the law that wife and children must be provided for." (*Sanders* v. *Simcich*, 65 Cal. 50, 52 [2 P. 741].)

■ (5) The law does not favor the failure to provide for surviving spouse or children (*Estate of Duke*, 41 Cal.2d 509, 512 [261 P.2d 235]).

■ (6) "The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture . . ." (*Estate of Carroll*, 138 Cal.App.2d 363, 366 [291 P.2d 976].)

■ (7) There is a presumption of law that the failure to name a child or grandchild in a will was unintentional (*In re Barter*, 86 Cal. 441 [25 P. 15]; *In re Salmon*, 107 Cal. 614 [40 P. 1030, 48 Am.St.Rep. 164]; *Estate of Ross*, 140 Cal. 282 [73 P. 976]).

■ (8) Although a testator may lawfully disinherit any or all of his natural heirs if he so desires, in order to avoid the operation of the pretermission statutes, an intent to omit provision for testator's child "must appear on the face of the will, and it must then appear from words which indicate such intent directly, or by implication equally as strong. Any other rule would lead to guesses or to inferences merely conjectural, which would be too unsubstantial to base judgment on." (*In re Stevens*, 83 Cal. 322, 329-330 [23 P. 379, 17 Am.St.Rep. 252]. See also *Estate of Hassell*, 168 Cal. 287 [142 P. 838]; *Estate of Labrie*, 130 Cal.App.2d 235, 237 [278 P.2d 760]; *Estate of Carroll*, 138 Cal.App.2d 363, 366 [291 P.2d 976].)

■ (9) "[B]efore what are considered to be the 'natural rights' of children to share in the inheritance of their immediate ancestors shall be taken away, the intent that they shall not so share must appear upon the face of the will strongly and convincingly." (*Estate of Hassell, supra*, 168 Cal. 287, 288—citing *In re Stevens, supra*, 83 Cal. 322; *Rhoton* v. *Blevin*, 99 Cal. 645 [34 P. 513]; and *In re Salmon*, 107 Cal. 614 [40 P. 1030, 48 Am.St.Rep. 164].)

■ (10) Before a testator may be said to have intentionally omitted his child, it must appear on the face of the will that he had such child in mind at the time of executing the will, and having the child in mind he omitted to provide (*Payne* v. *Payne*, 18 Cal. 291; *In re Stevens*, 83 Cal. 322, 330 [23 P. 379, 17 Am.St.Rep. 252]; *Rhoton* v. *Blevin*, 99 Cal. 645 [34 P. 513]; *In re Salmon*, 107 Cal. 614, 617 [40 P. 1030, 48 Am.St.Rep. 164]; *Estate of Callaghan*, 119 Cal. 571 [51 P. 860, 39 L.R.A. 689]; *Estate of Trickett*, 197 Cal. 20 [239 P.

406]—which in turn cites *Estate of Lindsay,* 176 Cal. 238 [168 P. 113]; *Estate of Minear,* 180 Cal. 239 [180 P. 535]; *Estate of Callaghan, supra; Estate of Hassell,* 168 Cal. 287 [142 P. 838]; and *Payne* v. *Payne, supra—Estate of Price,* 56 Cal. App.2d 335 [132 P.2d 485]; *Estate of Smith,* 86 Cal.App.2d 456 [195 P.2d 842], citing 26 Cal.Jur., § 238, p. 925; *Estate of Talmadge,* 114 Cal.App.2d 18 [249 P.2d 345]; *Estate of Eggleston,* 129 Cal.App.2d 601, 607 [277 P.2d 469]; *Estate of Labrie,* 130 Cal.App.2d 235, 237-238 [278 P.2d 760]).

 (11) A cardinal rule of interpretation, applicable to cases involving pretermission, requires that the court not only look to the clause under scrutiny, but in determining the testator's intent, it interpret that clause in relation to every other expression in the will (*Rhoton* v. *Blevin, supra,* 99 Cal. 645; *Estate of Cochems,* 112 Cal.App.2d 634 [247 P.2d 131]).

 (12) In determining the question of intentional omission, more than in any other situation involving the interpretation of wills, the court must be guided by the individual facts of each case, and must not be governed by previous interpretation of similar words or phrases (*Estate of Wilson,* 184 Cal. 63, 68 [193 P. 581]; *Estate of Henderson,* 161 Cal. 353, 357 [119 P. 496]). Applying this rule, the courts of this state have held that under some circumstances the testator's use of the phrase "my children" was intended by him to include all lineal issue (*Rhoton* v. *Blevin, supra,* 99 Cal. 645; *In re Schedel,* 73 Cal. 594 [15 P. 297]), and that, under other circumstances, the use of the same phrase was intended to apply only to the first generation of such lineal descendants (*Estate of Utz,* 43 Cal. 200, 203-204. See also *In re Salmon, supra,* 107 Cal. 614). In *Estate of Margaretha Pfuelb,* 48 Cal. 643, it was held that the words "relation" and "relationship" may, under some circumstances, denote kindred of consanguinity, but under other circumstances may refer to kindred of affinity. *Estate of Trickett,* 197 Cal. 20 [239 P. 406], although holding that, under the facts of the case, by the use of the word "relatives" the testator intended to refer to those next of kin who would take in the event of intestacy, also held that the word does not have such significance in all circumstances. *Estate of Van Wyck,* 185 Cal. 49 [196 P. 50], interpreted the phrases "my children," "their descendants," and "my grandchildren," all in such a manner that, under the facts of that case, the reference to general classes did not include all individual members thereof. Citation of further authorities is not required to demonstrate that the statement made in the Wilson

opinion to the effect that specific words of kinship must be interpreted in light of the circumstances of each individual case, and not by slavish adherence to the interpretation placed upon the same words under a different state of facts, is a correct statement of law.

(13) Mere general phraseology, standing alone, cannot be construed to indicate an intent to omit provision for a presumptive heir, under every possible circumstance, even if such phraseology includes the word "heirs" (*Estate of Axcelrod,* 23 Cal.2d 761, 767-768 [147 P.2d 1]).

(14) Strict adherence to the technical meaning of words and phrases must give way, if inconsistent with the testator's intent as shown by the will as a whole (*Estate of Olson,* 144 Cal.App.2d 694 [301 P.2d 501]).

If these generalities be kept in mind, it is quite clear that the language of the will under consideration does not, as a matter of law, indicate an intent to exclude appellant.

Appellant is obviously not included in that class for whom clause Thirteenth provides $1.00 should they *contest* the will. This is so, for the obvious reason that appellant is not a contestant. She is a petitioner for distribution, claiming to be a pretermitted heir, and such a person has never been held to be a contestant (*Estate of Loyd,* 175 Cal. 699 [167 P. 157]; *Estate of Sankey,* 199 Cal. 391, 405 [249 P. 517]; *Estate of Price,* 56 Cal.App.2d 335, 338 [132 P.2d 485]; *Estate of Smith,* 145 Cal. 118 [78 P. 369]; *Estate of Cochran,* 116 Cal.App.2d 98 [253 P.2d 41]).

In order to bring appellant within the remaining provisions of clause Thirteenth respondent reads into that clause an intent to include the specific person within the general class of persons claiming "by virtue of relationship." It is true that the cases cited by respondent have held that, under the circumstances therein, the words "relation" or "relationship" were deemed to include testator's child. But, as we have shown, words of kinship may not be interpreted solely on the basis of previous definition under another set of facts. Here it is shown that the jury could have found that testator believed appellant to be dead. Hence it cannot be said with utter finality that he intended the phrase "by virtue of relationship" to apply to her.

The will must be interpreted as a whole, giving effect to all of its clauses. While Torregano did not say in so many words that he never had issue, the language of clause Second is meaningless unless it was intended to convey the

impression that Torregano was childless. To give it any effect whatsoever, we must presume that testator thought he was without lineal issue. Hence the word "relationship" may not be said, as a matter of law, to have been used with intent to exclude his child. As said in *In re Stevens, supra,* at page 330, "it is an easy matter to put the question beyond a doubt by naming the children . . . in the will, with a nominal legacy, or none at all, from which it will clearly appear that these persons are in the mind of the testator . . ." The result must be, as stated in *Estate of Cochran, supra,* at page 101, " '. . . it is not in the power of the court, from the will alone, to say whether the testator had a child living or not, or whether he ever had one. As to the children of the testator the will is a mere blank.' " (Quoting from *Estate of Price, supra.*)

■ Directly applicable to the case under consideration is the rule that before a testator may be said to have intentionally omitted his child, it must appear on the face of the will that he had such child in mind at the time of executing the will, and having the child in mind he omitted to provide (see cases cited, *supra,* under par. 10). ■ If a jury may find from the facts herein that Torregano thought appellant dead, he could not be said to have had her in mind for the purpose of excluding her from his estate. One does not disinherit a deceased person.

■ Respondent argues that such an interpretation gives little or no effect to clause Thirteenth. We cannot agree. Clause Thirteenth is a typical clause intended to prevent contest. Under the construction of the will in this opinion the clause is given full effect as a no contest clause. Such a clause differs radically from a clause of disinheritance. The true disinheritance clause often fails to name a specific presumptive heir, and yet may be interpreted to exclude the same because of the use of words expressly indicating an intent to disinherit. Typical examples of general disinheritance clauses are: "I purposely leave nothing to anyone not mentioned in this will . . ."; "I intentionally leave nothing to any other person, with full knowledge . . ." Perhaps that most widely used (and most often interpreted to exclude presumptive heirs, even though unnamed) is some form of the clause found in *Van Strien* v. *Jones,* 46 Cal.2d 705 [299 P.2d 1], wherein the testator expresses his intent to exclude or leave a nominal sum to any person, not named in the will, "who if I died intestate would be entitled to share in my estate." Such language was also in the will under scrutiny in *Estate of*

*Fernstrom,* 157 Cal.App.2d 380 [321 P.2d 25], relied upon by respondent. ▆▆▆ Often a testator combines in one clause provisions intended to bar contest with general language of disinheritance ;[8] but we have found no case in which the unnamed presumptive heir was held to be excluded from the will unless that will contained either some express language of intention to omit provision for all but those named, or a complete testamentary plan from which it clearly appeared that testator would adhere to such plan even in the event that it should later appear that he had a presumptive heir who was unknown to him. The Torregano will contains no direct or indirect language of disinheritance, and no inference that testator would adhere to his testamentary scheme in the event that he had a daughter whose existence was unknown to him. ▆▆▆ While he did leave $1.00 to anyone who might claim by reason of relationship, this clause must be viewed in light of the language of *Estate of Carroll,* 138 Cal.App.2d 363 [291 P.2d 976] (hearing by Supreme Court denied), wherein it was said, at page 366: "We have been unable to find, nor have we been cited to, any case holding that the mere bequest of a nominal sum constitutes an intent to disinherit under other circumstances than those contemplated in the will."

 ▆▆▆ We have read and analyzed each case cited by respondent for the proposition that appellant is excluded from the Torregano estate as a matter of law, and we find that although the language of some appears to give comfort to respondent's contention, none actually resulted in judgment against the claiming pretermitted heir unless the will included: (a) a specific clause of disinheritance, (b) a general clause expressing an intention to disinherit all those not named, (c) a clause affecting all persons who might have taken in the event that testator died intestate, (d) a clause expressing some doubt regarding the identity of testator's heirs and providing for disinheritance or nominal sums to such persons who may prove to be his heirs, (e) reasons for leaving the entire estate to the named beneficiaries, which reasons exclude the intent to leave anything to other presumptive heirs, or (f) a complete testamentary plan from which the court was bound to find that testator would have left nothing to any other person even though there were presumptive heirs of whose existence

---

[8] An example of the use of both the intentional disinheritance clause and a combination of disinheritance and no contest clause is found in the will involved in *Estate of Brown,* 164 Cal.App.2d 160 [330 P.2d 232].

he was unaware.[9] We find none of these elements in the Torregano will.

For the reasons assigned, it cannot be said as a matter of law that the language found in clause Thirteenth clearly indicates an intention to omit provisions for testator's daughter. It should require more than such general language to exclude from the operation of section 90 a daughter of whose existence testator was unaware.

Under the circumstances here presented the question of whether or not appellant is a pretermitted heir is one of fact, and the trial court erred in taking it from the jury. Whether appellant is the person she claims to be, whether or not Torregano believed her dead, and whether he intended, under the facts, that the phrase "by relationship or otherwise" should include appellant, are issues which must be determined by the trier of fact. Under the facts of this case such questions are not matters of law.

The judgment is reversed and the cause remanded for a new trial.

Gibson, C. J., Traynor, J., and White, J., concurred.

SPENCE, J.—I dissent.

In my opinion, the majority's reversal of the decree cannot be reconciled with *Van Strien* v. *Jones,* 46 Cal.2d 705 [299 P.2d 1]; *Estate of Fernstrom,* 157 Cal.App.2d 380 [321 P.2d 25], and the cases cited therein.

In *Van Strien,* this court said at page 707: "It is well settled that where in a will a testator's child is intentionally omitted or given $1.00 or any other sum, section 90 of the Probate Code is satisfied although the child is not mentioned by name. (*Estate of Minear,* 180 Cal. 239 [180 P. 535]; *Estate of Lindsay,* 176 Cal. 238 [168 P. 113]; *Estate of Hassell,* 168 Cal. 287 [142 P. 838]; *Estate of Doell,* 113 Cal.App.

---

[9]This is not to say that in the absence of some such language in the will no case may result in a determination of intent solely as a question of law. Such might be the result when the language of the will creates an inference of intent to omit provision for a presumptive heir, and claimant has failed to either allege or offer proof of an absence of intent to omit. Under such circumstances it could be said that claimant failed to raise a factual issue, thus requiring the court to determine the case as a matter of law. It is interesting to note that most of the cases cited by respondent (and this is particularly true of *Van Strien* v. *Jones* and *Estate of Fernstrom, supra*) came before the appellate courts either on demurrer sustained, or under such circumstances that proof of lack of intent was not offered. In the instant case we are not called upon to determine what might have been the result had petitioner failed to allege or offer proof that the omission was unintentional.

2d 37 [247 P.2d 580].) The use of such terms as 'relatives' and 'children' have been held sufficient to designate heirs who might otherwise be pretermitted (*Estate of Trickett,* 197 Cal. 20 [239 P. 406] ; *Rhoton* v. *Blevin,* 99 Cal. 645 [34 P. 513] ; *cf. Estate of Utz,* 43 Cal. 200), but such generalities as 'anyone who may contest this will' and 'any other person' do not include heirs otherwise pretermitted (*Estate of Price,* 56 Cal. App.2d 335 [132 P.2d 485] ; *Estate of Cochran,* 116 Cal.App. 2d 98 [253 P.2d 41])."

This court there recognized that the general language of a simple "no-contest" clause, such as "anyone who may contest this will" or "any other person," is insufficient to satisfy section 90 of the Probate Code. On the other hand, this court further recognized that an affirmative expression of intention to disinherit, or to leave a nominal amount to, all other persons, known or unknown to the testator, who might claim to be his "relatives" or "heirs," is sufficient to satisfy the requirements of said section.

In the present case, the will of the testator clearly and affirmatively manifested his intention to disinherit, except to the extent of a nominal sum of one dollar, "any person or persons who may . . . assert any claim to share my estate *by virtue of relationship or otherwise.* . . ." (Emphasis added.) This is not a simple "no-contest" clause but, on the contrary, the clause clearly shows the testator's intention to disinherit, except to the extent of one dollar, any person who might assert a claim by reason of being a relative of the testator. Such a clear and unambiguous expression of the testator's intention should suffice. (*Van Strien* v. *Jones, supra,* 46 Cal. 2d 705 ; *Estate of Trickett,* 197 Cal. 20 [239 P. 406] ; *Estate of Minear,* 180 Cal. 239 [180 P. 535] ; *Estate of Lindsay,* 176 Cal. 238 [168 P. 113] ; *Estate of Fernstrom, supra,* 157 Cal.App.2d 380 ; *Estate of Allmaras,* 24 Cal.App.2d 457 [75 P.2d 557] ; *Estate of Lombard,* 16 Cal.App.2d 526 [60 P.2d 1000].)

Under the cited authorities, the fact that the testator combined the disinheritance clause with a "no-contest" clause appears immaterial. Furthermore, the fact that the testator declared in clause "Second" of his will that he had no issue of a second marriage but made no reference to a prior marriage or issue thereof tends to defeat rather than to support appellant. In *Estate of Fernstrom, supra,* 157 Cal.App.2d 380, the court said at page 385 that "the rule is settled that when a testator has declared in his will that he intends to omit all heirs not therein provided for, such declared intention and

purpose will be given effect and it is immaterial whether the testator knew of the existence of the particular claimant or whether the particular claimant was in the testator's mind. In the Allmaras, Lombard and Minear cases, it appeared from the wills involved that the testators did not have the unsuccessful claimants in mind, for, in each of those cases, as in the instant case, the testator declared that he had "no children." If a testator's erroneous statement in his will that he has no children does not vitiate the effect of a general disinheritance clause, *a fortiori*, a correct statement, such as made by the testator here, that he has no children by a particular marriage should not do so. Moreover, the very limitation by the testator of clause "Second" to a denial of issue of his second marriage clearly indicates the testator's recognition of the possible existence of issue of a prior marriage to whom the disinheritance clause was particularly intended to apply.

In the light of the cited authorities and the clear expression of the testator's intention in his will, I am of the opinion that the trial court properly ruled, as a matter of law, that appellant was not entitled to share as a pretermitted heir.

I would affirm the decree.

Schauer, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied June 22, 1960, Schauer, J., and McComb, J., were of the opinion that the petition should be granted.