[Civ. No. 30517. Second Dist., Div. Two. Feb. 8, 1967.]

Estate of CHARLES A. BANK, Deceased. ROBERT A. BANK, Plaintiff and Appellant, v. UNION BANK, as Executor, etc., et al., Defendants and Respondents.

Eilers, Wehrle & Anderson and Fred F. Wehrle for Plaintiff and Appellant.

Harvey Strassman and Harold D. Geffen for Defendants and Respondents.

HERNDON, J.—This is an appeal from the judgment entered in this probate proceeding on December 22, 1965, in favor of the beneficiaries named in the will of Charles A. Bank, decedent, and against Robert A. Bank, appellant. This judgment was entered following a hearing upon appellant's petition for determination of heirship in which he sought to have the court determine that he was decedent's son and pretermitted heir and therefore entitled to have decedent's entire estate distributed to him under the provisions of Probate Code sections 90 and 91.

Decedent was an attorney who was admitted to the practice of law in this state on November 27, 1911, and who remained in good standing until his death on May 28, 1963.

On November 10, 1919, decedent married Blanche Craven in Los Angeles, California, and some five and one-half months later she gave birth to appellant. On October 29, 1923, decedent filed a "Complaint for Divorce, Desertion," and an interlocutory judgment was entered in the action on April 21, 1924, and a final judgment on May 25, 1925. Decedent was listed as appellant's father on appellant's birth certificate and decedent alleged such relationship in his verified complaint for divorce. Respondents did not dispute appellant's contention that he was for all legal purposes decedent's son.

Appellant testified that he visited decedent some 25 or 30 times during the 1930s and that his father gave him various sums of money and took him on trips to Big Bear and La Quinta. When appellant was graduated from high school, decedent gave him the purchase price of a car as a graduation present. Appellant visited decedent both at his office and his apartment during 1938 and saw a picture of himself that his father kept in his residence.

In January 1916, decedent had taken out a policy of life insurance in the principal sum of $1,000 naming his estate as beneficiary and reserving the right to change the beneficiary in the future. On February 14, 1921, decedent had changed the designated beneficiary to his then wife, appellant's mother, and on October 27, 1932, he again changed the beneficiary to appellant whom he described as his son. No further changes were made thereafter and the proceeds of this policy were paid over to appellant after decedent's death.

On February 14, 1935, decedent married Joan Paget in Los Angeles, California. On September 8, 1938, decedent and Joan entered into a property settlement agreement and on October 4, 1938, a supplement thereto in which they effected an agreed division of all their community property. Joan filed a complaint for divorce against decedent on October 7, 1938. On October 27, 1938, an interlocutory judgment of divorce was entered in this action and a final judgment was entered on November 1, 1939. There were no children the issue of this marriage and decedent thereafter remained single until the time of his death.

Decedent left a will, dated September 15, 1938, disposing of all of his estate as follows:

"SECOND: I hereby give, bequeath and devise all of my Es-

tate, whether real, personal, or mixed, and wherever situate, to be divided, share and share alike, among and between my beloved sisters, Helen, Ruth, Agnes and Ethel, and my beloved brothers, Elliott and Leslie;

"In the event of the death of any one or more of the foregoing named beneficiaries, the share of such deceased beneficiary, or beneficiaries, shall be given to the surviving spouse and any issue of said deceased beneficiary and said spouse, in equal proportions;

"In the event that any such deceased beneficiary shall have neither surviving spouse or issue, then such bequest in favor of such beneficiary, shall lapse, and the amount thereof shall go to augment the Estate to be divided among the beneficiaries hereinbefore named. . . .

"FOURTH: In the event that any person, or persons, shall establish any right as an heir-at-law, through marriage, or relationship, then to such person, or persons, so satisfactorily establishing any right to participate in my Estate, I give and bequeath to each of such persons the sum of One Dollar ($1.00)."

The application and effect of various disinheriting clauses such as that found in paragraph fourth of decedent's will in the instant case have been analyzed on innumerable occasions. The general rules evolved from these decisions were recently summarized and applied in *Estate of McClure*, 214 Cal.App. 2d 590, 592-594 [29 Cal.Rptr. 569] (hearing denied), in a factual setting as indicated by the following language:

". . . Article Eighteenth of the subject will provided as follows:

" 'Should any person contest this will and claim to be an heir to any part of my estate and be able to establish such fact, then in that event I give such person or persons the sum of ONE DOLLAR ($1.00) each and the balance of my estate to which such person or persons might be entitled shall pass in accordance with the terms of this will.'

" . . . . . . . . . . . .

"By section 90 of the Probate Code, 'When a testator omits to provide in his will for any of his children, or for the issue of any deceased child,' and provision therefor has not otherwise been made, 'unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate.' The purpose of this section is to guard against the unintentional omission of lineal descendants from a share in

the decedent's estate, e.g., 'by reason of oversight, accident, mistake or unexpected change of condition.' (*Estate of Torregano*, 54 Cal.2d 234, 248 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597].) To effect this purpose the statute requires that if a testator wishes to disinherit such descendants, his intent to do so 'must appear on the face of the will, and it must then appear from words which indicate such intent directly, or by implication equally as strong.' [Citation.] To establish an intent to disinherit a person claiming to be a pretermitted heir, it must appear on the face of the will that, at the time of its making, the testator had that person in mind and intentionally omitted to provide for him. [Citation.] On the other hand, the fact that a testator had in mind a particular person for whom he made no provision in his will need not be made to appear from language designating that person by name. [Citations.] The use of language designating a class of which that person is a member may suffice to establish such fact, if the designation used refers to those who might otherwise be pretermitted. [Citations.] However, the intent expressed by a class designation may not be the same in all instances. Although the use of such language under one set of circumstances may indicate that the testator had a particular relative in mind when making his will, when used under other circumstances it may not so indicate. Thus, the relationship between the use of language designating a class and the intention of the testator, for the purpose at hand, depends upon the circumstances of the particular case. [Citations.]

" 'In determining the question of intentional omission, . . . the court must be guided by the individual facts of each case, and must not be governed by previous interpretation of similar words or phrases.' [Citation.]

"Nevertheless, absent any factors indicating a contrary conclusion, a provision in a will bequeathing a nominal amount to any person claiming to be an heir of the testator refers to a child of the testator not otherwise provided for therein, and satisfies the requirements of section 90 of the Probate Code that it appear therefrom that he had such child in mind at the time of executing his will, and intentionally omitted making any other provision therefor. [Citations.] Such a provision is equivalent to a disinheritance clause. [Citations.]"

■ It is true, of course, that under the rule enunciated in *Estate of Torregano*, 54 Cal.2d 234, 245-247 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597], appellant was entitled to

introduce extrinsic evidence to prove decedent's lack of intent to omit provision for him despite the comprehensive language of paragraph fourth of decedent's will. This right was recognized by the trial court and appellant introduced evidence establishing the facts above recited concerning decedent's separation and divorce from his second wife. On this factual basis appellant contends that as a matter of law the trier of the fact was bound to conclude that decedent had intended by paragraph fourth of his will to exclude only his second wife and her relatives and had *unintentionally* omitted to provide for appellant "by reason of oversight, accident, mistake or unexpected change of condition."

We find no error in the trial court's refusal to accept such a limited and unnatural restriction upon the coverage of the technical term "heir-at-law" particularly when used by a skilled attorney.[1] (Prob. Code, §§ 106, 108.) The fact that decedent's second marriage was terminating might well suggest a motive for his determination to prepare his will at that particular time and to expand upon the definition of the term "heir-at-law" by adding the redundant "through marriage, or relationship," but it certainly lends little support to the contention that decedent lacked the intent to omit provision for his son when he used language unquestionably legally sufficient to demonstrate such intention. As a man well-versed in the law, it is virtually certain that decedent was well familiar with the many decisions in this state which had held that a specific reference to "heirs" included children of a testator although they were not otherwise named or described. ■ Thus as stated in *Estate of Hassell*, 168 Cal. 287, 288-289 [142 P. 838] :

"It is, of course, well established that before what are considered to be the 'natural rights' of children to share in the inheritance of their immediate ancestors shall be taken away, the intent that they shall not so share must appear upon the face of the will strongly and convincingly. [Citations.] If the intent is not thus satisfactorily established the law will reach the humane conclusion that the testator inadvertently failed to make provision for his children or children of deceased

---

[1] An associate of decedent called as a witness by appellant described him in the following language: "I thought Charles was a very good lawyer; that he took meticulous care of his practice, and he never went into court that he wasn't properly prepared. If there was a legal point, he had the point briefed and handed it to the opposition and to the Court. He took more care than the average lawyer does that way. I thought Charles was a very good lawyer."

children. The first quotation from this will indicates the knowledge of the testator of the existence of one son, who is made the recipient of the father's bounty. It is argued by appellants that the language subsequently quoted to the effect that 'heirs not herein mentioned have been omitted with full knowledge' should not be construed to mean and to include his children, since if he had designed or intended to exclude his children he would have used the precise word. But this is asking the court to put an unpermissible construction upon a word of well defined meaning both at law and in popular parlance. At law, while the word may include others, it always includes the children of a decedent. In popular parlance it not only has the same meaning, but, if there be any difference, it is more frequently used as a synonym of children. Thus, in common speech, a man will frequently speak of his heirs, meaning thereby his children and his children alone. No natural sympathy for the disinherited (the reason for which disinherison we cannot know) can be allowed so grossly to pervert the meaning of a well understood word as to permit us to hold, as here under appellant's contention we would be obliged to hold, that the word 'heirs' did not include and was not used to include a class universally embraced within its significance.''

 The one contention made by appellant that we regard as warranting further specific consideration is his assertion that the trial court erred in questioning and permitting respondents to question appellant concerning his contacts with decedent during the 1930s. We believe this contention results from a mistaken interpretation of the rule developed in *Estate of Torregano, supra,* 54 Cal.2d 234, 244-247, which for the first time clearly enunciated a claimant's right to introduce extrinsic evidence to prove ''lack of intent to omit'' in the face of language in a will that would be formally sufficient to indicate intentional omission absent such extrinsic evidence. As clearly expressed in *Torregano,* at p. 246, this right was made mandatory by the practical exigencies of the situation: ''From a standpoint of reason and common sense, it is obvious, by very definition, that a pretermission can exist only through oversight. It occurs only when there has been an omission to provide, absent an intent to omit. As pointed out in *Matter of Estate of Garraud, supra,* [35 Cal. 336] the mistake or accident which caused the testator to omit provision for his child cannot possibly appear from the will itself. Extrinsic evidence for this purpose must

be contemplated by the statute. Otherwise pretermission could never be proven.''

However, under the terms of Probate Code section 90 the converse of this situation is not true and the court in *Torregano* left unchanged the rule that where the will by its own terms does not expressly indicate that the failure to provide for the testator's children or grandchildren was intentional, such actual intention cannot be shown by resort to extrinsic evidence. *Estate of Falcone,* 211 Cal.App.2d 40, 44-46 [27 Cal. Rptr. 38], provides a classic example of this type of situation. There the testatrix had drawn a holographic will which contained no provision for her children, but which failed either to refer to them in any way or to express any indication that her failure to provide for them was intentional. Under such circumstances it was held that the trial court properly rejected evidence offered by the beneficiary under the will in the form of a typewritten message (which allegedly had accompanied the holographic will when presented to the beneficiary by the testatrix) in which she expressed her awareness of her children's existence and her reasons for not providing for them in her will.

However, this latter rule does not mean, as appellant contends, that when one seeking to establish a *lack* of intent to omit provision for him despite the language of a will introduces extrinsic evidence tending to establish a factual picture from which the trier of the fact might *find* such lack of intent, the opposing parties are powerless to *rebut* such efforts by the introduction of impeaching evidence or by additional evidence designed to give a more complete and accurate portrayal of the true relationship of the parties at the time the will was drawn.

Thus, in *Torregano* the court concluded with the following observation at page 254: ''Under the circumstances here presented the question of whether or not appellant is a pretermitted heir is one of fact, and the trial court erred in taking it from the jury. Whether appellant is the person she claims to be, whether or not Torregano believed her dead, and whether he intended, under the facts, that the phrase 'by relationship or otherwise' should include appellant, are issues which must be determined by the trier of fact. Under the facts of this case such questions are not matters of law.''

We regard it as clear that the proponents of the will in *Torregano* would have been entitled to introduce extrinsic evidence to rebut the claims of the alleged pretermitted daughter

therein by establishing (1) that she was not the person she claimed to be, or (2) that Torregano had not believed her dead when he drafted his will, or (3) that by the language used therein he had intended to include her among the class of persons for whom he intentionally had made no provision. Such extrinsic evidence would not have been received for the purpose of proving an intent indiscernible from the face of the will but in order that the trier of the facts might have an accurate and complete picture of the relevant and material evidentiary facts bearing upon the ultimate issue of fact to be decided. Any contrary holding would only frustrate the proper functioning of the factfinding process by allowing the party claiming to be a pretermitted heir to present a one-sided and possibly false or distorted picture of facts by limiting the admissible extrinsic evidence to that tending to prove facts and circumstances favorable to his position. Obviously this would be a most unusual and abnormal rule of evidence.

In the instant case we believe the trial court was entirely correct in developing from appellant's own testimony a full understanding of the relationships of the affected parties at the time decedent drafted his will in order properly to decide what inferences, if any, should be drawn from the fact that this will was executed at the time of dissolution of decedent's second marriage. The trial court's factual conclusion that decedent had appellant in mind at the time he drafted his will and intended to include him within the class of persons to whom he made only a nominal bequest is adequately supported by the record and therefore is unassailable upon appellate review.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied March 8, 1967, and appellant's petition for a hearing by the Supreme Court was denied April 5, 1967.