In re **ESTATE OF Cyrus J. HOIGAARD.**

No. C1–84–968.

Court of Appeals of Minnesota.

Dec. 31, 1984.

Review Denied March 21, 1985.

Charles Halberg, Thomas Utter, Burnsville, for appellant.

Charles Quaintance, Jr., Virginia Bell, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from an order of the Hennepin County Probate Court finding that appellant was intentionally omitted from his father's will. We affirm.

## FACTS

Cyrus J. Hoigaard died in January, 1983, and is survived by his wife and two sons: appellant Collins and Conrad Hoigaard. Appellant was born out of wedlock in 1930. The deceased acknowledged appellant as his son in a 1930 paternity suit and again in support proceedings in 1938 and 1943. There is no dispute that appellant was Hoigaard's son.

Hoigaard executed his last will in October, 1981. The will was drafted by Thomas Sands, the deceased's attorney, and John Forrest, Conrad Hoigaard's attorney. Previous wills for Hoigaard were drafted in 1959 and in 1970. The will established two trusts, the assets of which were to go to Hoigaard's wife, to his son Conrad, and to Conrad's children. Upon his death, Hoi-

gaard's controlling interest in Hoigaard's Inc. was to pass to Conrad.

Appellant testified that he first met Hoigaard in the spring of 1982. He telephoned Hoigaard and stated: "Well, I would like to get in touch with you and discuss the matter that as I understand it, you are my father. * * *" In April of that year appellant visited Hoigaard at his home for about three and one-half hours. During that visit Hoigaard admitted that he was appellant's father. Hoigaard never mentioned the telephone call or the visit to his attorneys during discussions relating to his will in the winter and spring of 1982. The 1981 will was discussed, but not changed during these meetings.

Neither Sands, Forrest, nor Conrad Hoigaard knew of the existence of Hoigaard's other son. However, Hoigaard's wife knew that Cyrus had a child born to him out of wedlock.

## ISSUES

1. Was evidence sufficient to support the trial court's finding that appellant was intentionally omitted pursuant to Minn. Stat. § 525.201?

2. Did the trial court err in receiving extrinsic evidence of testator's intent to omit appellant?

## ANALYSIS

Minn.Stat. § 525.201 (1982) provides:

If a testator omits to provide in his will for any of his children or the issue of a deceased child, they shall take the same share of his estate which they would have taken if he had died intestate unless it appears that such omission was intentional and not occasioned by accident or mistake.

Appellant claims that he was mistakenly or accidentally omitted from his father's will, therefore he is entitled to an intestate share in his father's estate.

The burden is on the party claiming intentional omission to prove that any omission was intentional. *In re Dorey's*

*Estate*, 210 Minn. 136, 297 N.W. 561, 562 (Minn.1941). The presumption is that the omission of the name of a child from a will of a parent was not intentional. *Bakke v. Bakke*, 175 Minn. 193, 220 N.W. 601 (Minn. 1928). Extrinsic evidence is admissible to show that an omission was intentional or otherwise. *In re Motz's Estate*, 125 Minn. 40, 145 N.W. 623, 625 (Minn.1914). The issue of intentional omission is a question of fact for the trier of fact to determine. *Bakke*, 220 N.W. at 601; *In re Motz*, 145 N.W. at 625–626.

The Minnesota Supreme Court has not specifically addressed the burden of proof required to prove an intentional omission under Minn.Stat. § 525.201. Appellant argues that the burden is one of "clear and convincing" evidence.

There appears little authority to support this claim. One commentator, 6 Am.Jur. POF 2d 108 (1975), says that the level of proof required to overcome the presumption of unintentional omission is a preponderance of the evidence. At least one case has held it is sufficient to prove an intentional omission by a "fair preponderance of evidence." *Smith v. Smith*, 62 R.I. 52, 54, 2 A.2d 896, 897 (1938). This is a dispute between private parties regarding the intent of a deceased. There are neither strong considerations of public policy nor compelling individual rights which require a higher standard than in other civil cases.

The relevant part of Hoigaard's will is found in Article Eight—General Governing Provisions:

8.1 *Definitions*

\*    \*    \*    \*    \*    \*

8.1.2 "Issue," "Descendants" or "lineal descendants" means all persons who are lineally descended from the person whose issue or descendants are referred to (including legally adopted lineal descendants) except illegitimate descendants and their descendants.

8.1.3. I have only one child, namely, CONRAD J. HOIGAARD.

\*    \*    \*    \*    \*    \*

8.3 *Protective Provisions*

8.3.1. *Omitted Issue.* I have intentionally limited gifts or devises under this will to my issue or descendants as defined in this will and have intentionally made no other provisions in this will for my issue, whether born or adopted before or after the execution of this will.

Mr. Sands testified that before drafting the 1970 will Hoigaard told him that among his descendants who were to take under the will he wanted to include "all of the people who were named with the exception of illegitimate descent." With respect to the drafting of the 1981 will, Sands testified with respect to Hoigaard's intentions that:

[H]e told me the same thing as to having the property descend to the legitimate children—to lineal descendants who were legitimate children.

John Forrest, who drafted paragraphs 8.3.1 and 8.1.2, stated that Hoigaard's intent under the will was to have the assets of the trusts pass to Hoigaard's wife and to Conrad and for Conrad to maintain control over the business interests.

Appellant argues that Hoigaard's will makes no mention of his existence and in paragraph 8.1.3 the testator states: "I have only one child, namely, Conrad J. Hoigaard." Appellant contends that this is evidence of a mistake—it is undisputed that Hoigaard had two sons. Appellant relies on *Gardner Estate*, 21 Cal.3d 620, 580 P.2d 684, 147 Cal.Rptr. 184 (1978), where the court ruled that a provision disinheriting every person not named in the will was insufficient to defeat a claim as an omitted child under that state's statute. The *Gardner* court stated that "the intent to disinherit must clearly appear on the face of the will" and found such general language insufficient evidence of an intentional omission.

Here, the will specifically addresses "illegitimate descendants." California courts have held that language of a will disinheriting a class of persons is sufficient to defeat a child as an omitted child, if the person falls within the class. Thus in *Estate of*

*Szekely*, 104 Cal.App.3d 236, 163 Cal.Rptr. 506 (Cal.1980), the court found that language disinheriting "heirs" sufficiently expressed an intent to disinherit the claims of grandchildren not mentioned in the will. Language disinheriting "children" and "relatives" has been found sufficient under California's pretermitted heir statute. *See In re Terregano's Estate*, 54 Cal.2d 234, 352 P.2d 505, 5 Cal.Rptr. 137 (1960). As the court in *Terregano* noted, there is no clear rule of law in this area, and the effect of specific words in a will must be interpreted in light of the circumstances of each individual case. *Id.*

The trial court found the definition of issue or descendants found in paragraph 8.1.2 of the will excluded illegitimate children. The trial court ruled that paragraph 8.3.1 expressed Hoigaard's intent to limit gifts under the will to his issue as he defined them in the will. Such a finding is not clearly erroneous. The court found that Hoigaard's statement that he had only one son was not a mistake but was consistent with his definitions and intentions under the will. This appears to be a simple and straight forward interpretation of those provisions of the will. On review, the trial court's findings of fact will not be disturbed unless clearly erroneous. Minn. R.Civ.P. 52.01. The language of the quoted paragraphs is a sufficient expression of an intentional omission under Minn.Stat. § 525.201.

There is no merit to appellant's contention that even if the will excludes illegitimate children he is not illegitimate because Minn.Stat. § 525.172 (Supp.1983) gives illegitimate children the same right to inherit as if born in wedlock once paternity has been established. The issue here is the testator's intent under the will, not whether appellant would inherit in an intestacy situation.

Appellant also contends that the will is confusing because it is written in the passive voice. He creatively rewrites it in the active voice to obtain another meaning. However convenient and grammatically

correct his version may be, it is not what Hoigaard wrote. It is not the function of the court to rewrite the will, but only to ascertain the testator's intent as evidenced in the will.

The law is clear in Minnesota that extrinsic evidence is admissible to show an intentional omission under Minn.Stat. § 525.201. *In re Estate of Dorey*, 210 Minn. 136, 297 N.W. 561 (Minn.1941).

### DECISION

The trial court properly concluded that the language of the will expressed Hoigaard's intent to exclude his illegitimate son from taking under the will. The trial court did not err in admitting evidence of Hoigaard's intent. Affirmed.