[No. B220317. Second Dist., Div. Six. Mar. 3, 2011.]

Estate of STEVEN WAYNE STOKER, Deceased.
DESTINY GULARTE et al., Petitioners and Appellants, v.
DANINE PRADIA et al., Objectors and Respondents.

COUNSEL

Law Office of Eric A. Woosley, Eric A. Woosley and Jordan T. Porter for Petitioners and Appellants.

Tardiff Law Offices, Neil S. Tardiff; Law Offices of Dennis J. Balsamo and Dennis J. Balsamo for Objectors and Respondents.

OPINION

**GILBERT, P. J.**—At one time the Probate Code appeared to refute the dictum, "Nothing endures but change." Not anymore.

A purported will is not executed in compliance with Probate Code requirements because it lacks witnesses' signatures. We conclude the will is

valid because the trial court found by clear and convincing evidence that the testator who signed it intended it to be his will. (Prob. Code, § 6110, subd. (c)(2).)[1]

Destiny Gularte, Donald Karotick and Robert Rodriguez (appellants) appeal a judgment that denied a petition to probate a 1997 will and a trust of Steven Wayne Stoker (decedent), and granted the petition of Danine Pradia and Darrin Stoker (respondents) to probate decedent's 2005 will. We conclude, among other things, that (1) challenges to the validity of decedent's 1997 trust were not barred by the 120-day limitations period in section 16061.8, (2) the trial court did not err by ruling that the 2005 will was valid, and (3) substantial evidence supports the judgment and the findings that decedent had revoked the 1997 will and trust. We affirm.

FACTS

On May 22, 1997, decedent executed a will and nominated Gularte to be the executor of his estate. In article two of the will, he listed Karotick and Gularte as the beneficiaries of gifts of personal property. In article three, he stated, "I give the residue of my estate to the trustee of the 1997 Steven Wayne Stoker Revocable Trust, created under the declaration of trust executed on the same date as, but immediately before, the execution of this will . . . ." Gularte was listed as the successor trustee of that trust. Decedent died on February 27, 2008.

On March 17, 2008, Gularte filed a petition to probate the will and requested that she be appointed the executor.

On March 18, Gularte served a notice to decedent's children (respondents) that pursuant to sections 16061.7 and 16061.8, they had 120 days to bring an action to contest the trust.

On March 25, Pradia filed an objection to Gularte's petition to probate the 1997 will and claimed that her father had executed a more recent will. She objected to Gularte being appointed executor. She said, "Gularte is the former girlfriend of my father. My father and [Gularte's] relationship ended in an angry moment in 2001, about 7 years ago. My father told me in November 2007 that he was afraid of [Gularte] and thought she was coming into his home and taking things."

On April 28, respondents filed a petition to probate a handwritten will signed by their father on August 28, 2005. The will provides, "To Whom It

---

[1] All statutory references are to the Probate Code.

May Concern: [¶] I, Steve Stoker revoke my 1997 trust as of August 28, 2005. Destiny Gularte and Judy Stoker to get nothing. Everything is to go to my kids Darin [*sic*] and Danene [*sic*] Stoker. Darin [*sic*] and Danene [*sic*] are to have power of attorney over everything I own." The will contained no witnesses' signatures.

At trial, Anne Marie Meier testified that she was a very close friend of decedent. One night in 2005, decedent was discussing "estate planning," and he asked Meier to "get a piece of paper and a pen." He then dictated the terms of the 2005 will. Meier wrote that document in her handwriting "word for word" from decedent's dictation. She handed it to him, "he looked at it and he signed it." Decedent told Meier that this was his last will and testament. Moreover, in front of the witnesses, he urinated on the original copy of the 1997 will and then burned it.

Homer Johns, a friend of decedent's, testified that he saw decedent sign the 2005 will.

The trial court found that respondents "established that the 2005 document was created at Decedent Stoker's direction and that he signed it," and that there was clear and convincing evidence that the 2005 will "evinces Decedent Stoker's intent." The court ruled that "[s]ince the 2005 will has been accepted for probate by this Court, the 1997 will has been revoked by operation of law."

## DISCUSSION

### *The 120-day Time Limit*

Appellants contend that the trial court erred by not ruling that any challenge to the validity of the 1997 trust was barred by the 120-day statute of limitations in section 16061.8. We disagree.

Section 16061.8 provides, in relevant part, "No person upon whom the notification by the trustee is served pursuant to this chapter . . . may bring *an action to contest the trust* more than 120 days from the date the notification by the trustee is served upon him or her . . . ." (Italics added.)

Appellants note that Gularte, the successor trustee of the trust, served a notice to respondents on March 18, 2008, warning them that "you may not bring an action to contest the trust more than 120 days from the date of this notification . . . ." They claim respondents did not file such an action within 120 days from that notice and they consequently waived the right to contest the trust.

■ But respondents filed a petition to probate the 2005 will. In determining whether that constitutes an action to contest the trust within the purview of section 16061.8, we look to the substance of that petition and its "practical effect." We are not bound by its label. (*Silberman v. Swoap* (1975) 50 Cal.App.3d 568, 571 [123 Cal.Rptr. 456]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].)

Respondents suggest that they were not required to file a separate proceeding entitled "action to contest the trust," because they achieved the same result by filing their petition to probate the 2005 will on April 28, 2008. We agree. That petition necessarily involved the issue of the validity of the 1997 trust, because in the 2005 will, decedent said he was revoking that trust. The 2005 will and the 1997 trust are inconsistent. Therefore, the trial court would have to consider the validity of decedent's revocation of the trust. The petition to probate the 2005 will is, "in practical effect," an action challenging the validity of the trust. (*Silberman v. Swoap, supra*, 50 Cal.App.3d at p. 571.) Respondents' petition was timely filed within the 120-day period. Filing a second petition labeled as an action to contest the trust would amount to unnecessary duplication.

■ Respondents also claim that the 120-day time limit for filing an action in 2008 to contest the trust is irrelevant here. The trust provided that decedent could revoke the trust "at any time during his lifetime." Decedent revoked it through his actions which included executing his 2005 will. The successor trustee is authorized to serve the 120-day notice when the revocable trust becomes irrevocable because of "the death of one or more of the settlors of the trust . . . ." (§ 16061.7, subd. (a)(1).) But the trust never became irrevocable because it was revoked before decedent's death. Gularte, as a successor trustee, had no authority to act under a revoked trust, and a court could not enforce it because that would contravene decedent's intent in his 2005 will. (*Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 891 [26 Cal.Rptr.3d 143].) There is no error.

### The Validity of the 2005 Will

■ Appellants claim that the will does not meet the requirements for a "[f]ormal [w]itnessed [w]ill," and therefore the trial court erred by admitting it to probate. A will must be signed by the testator and at least two witnesses. (§ 6110, subds. (b)(1) & (c)(1).) Here the 2005 will is signed by decedent, but it contains no witnesses' signatures. Two witnesses, however, saw decedent sign it, and they testified in court to verify that this will was genuine.

Respondents note that the Probate Code contains a provision that allows wills that are defective in form to be admitted to probate if they are consistent with the testator's intent. Section 6110, subdivision (c)(2) provides, "If a will

was not executed in compliance with paragraph (1), the will shall be treated as if it was executed in compliance with that paragraph if the proponent of the will establishes by clear and convincing evidence that, at the time the testator signed the will, the testator intended the will to constitute the testator's will." Here the trial court found that the 2005 document constituted decedent's last will.

Appellants argue that the Legislature never intended this provision to apply to cases involving handwritten documents. We disagree. " ' "It is a prime rule of construction that the legislative intent underlying a statute . . . must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning." ' " (*O'Brien v. Dudenhoeffer* (1993) 16 Cal.App.4th 327, 332 [19 Cal.Rptr.2d 826].) Where the statute is inclusive, containing no limiting or qualifying language to exclude persons from its scope, the words the legislators used should control.

Here the statutory language is clear and broad, and there is no language to support the limitation appellants propose. This statute applies to wills that are "in writing" and signed by the testator. (§ 6110, subd. (a); *id.*, subd. (b)(1).) The 2005 document is a written will signed by decedent. The statute contains no language to indicate that the wills covered by this section are limited to typewritten wills. Consequently, handwritten nonholographic wills are not excluded from the scope of this statute.

Moreover, statutes "should be given a construction consistent with the legislative purpose . . . ." (*Silberman v. Swoap, supra*, 50 Cal.App.3d at p. 571.) Remedial statutes should be broadly and liberally construed to promote the underlying legislative goals. (*Alford v. Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) The broad and remedial goal of this provision is to give preference to the testator's intent instead of invalidating wills because of procedural deficiencies or mistakes. Including the 2005 will within the purview of this statute is consistent with that purpose.

*Retroactivity*

Appellants claim that section 6110, subdivision (c)(2) was effective January 1, 2009, and therefore it cannot be applied retroactively to a will drafted in 2005.

Respondents claim that by applying this statutory provision to the present case, the trial court followed the legislative intent. They note that retroactive application of this provision is consistent with a strong policy of preventing the invalidation of wills because of technical deficiencies. We

agree. "It has been noted that '[i]n most cases statutes dispensing with formalities previously required in the execution of wills have, upon one ground or another, *been applied retrospectively, where the effect has been to validate the previously executed will . . . .*' " (*Estate of MacLeod* (1988) 206 Cal.App.3d 1235, 1244 [254 Cal.Rptr. 156], italics added.) "We believe, in the final analysis, this practice is not based on arcane rules relating to the ambulatory nature of wills but rather to the *strong policy of the law to uphold, when possible, the validity of wills.*" (*Ibid.*, italics added.)

Appellants contend that the trial court's decision is inconsistent with section 7000, because the critical time period is not the date of trial or the 2009 amendments to section 6110, it is the date of decedent's death. They note that section 7000 states, "title to a decedent's *property passes on the decedent's death* to the person to whom it is devised in the decedent's last will . . . ." (Italics added.) They claim that at the time of death (1) the 2005 document was not a valid will because it contained no witness signatures, and (2) that consequently the court should have disregarded it and given effect to the 1997 will and trust, the only valid documents at the time of death. Appellants argue that their rights should not be made contingent on a legislative amendment that occurred years after the testator's death.

■ Appellants are correct that the 2005 document was not a valid will at the time of decedent's death. But their assumption that it could therefore be ignored is unfounded. Even though it could not be probated as a will before 2009, the document was properly considered as evidence of an unequivocal signed revocation of decedent's prior will and trust. A revocation may be accomplished without the formalities of a formal will. (§ 6120.) "In determining whether a will has been revoked, courts may consider extrinsic evidence of the testator's intent." (*Estate of Anderson* (1997) 56 Cal.App.4th 235, 247 [65 Cal.Rptr.2d 307].) This is precisely what the trial court did, and it reasonably could find there was a compelling showing of an intent to revoke the 1997 will and trust based on the 2005 document and the other evidence presented at trial.

Appellants did not lose their right to inherit property because of the 2009 amendments. Even prior to that legislation, a probate court could properly admit the 2005 document as a part of the evidence to invalidate the 1997 will and trust. Therefore appellants' claim that absent the 2009 amendments the probate court would have been required to probate the 1997 will and enforce the 1997 trust is not correct. Before or after the amendments, the obstacle to appellants achieving their goals remained the same—revocation. The 2009 legislation did not change the status of the 1997 will and trust. At the time of death they were simply instruments that had been voided by the testator during his lifetime.

■ The 2009 legislation gave the court the authority to consider the 2005 written revocation to also be a will that could be probated if clear and convincing evidence established that it was consistent with decedent's intent. "[T]he Legislature has clearly expressed its intention that amendments to the Probate Code apply on their effective date . . . ." (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1137 [90 Cal.Rptr.3d 701, 202 P.3d 1089]; see § 3.) The trial court's decision to probate the 2005 will is consistent with section 7000, because it was "decedent's *last will*."

Moreover, this case went to trial in 2009. Section 6110, subdivision (c)(2) governs the procedure and evidentiary standard probate courts must currently use in conducting trials on the validity of wills. Applying appellants' approach would undermine the legislative goal of modernizing probate procedure and allow a procedural omission to override the testator's intent. Appellants claim that to apply the provision retroactively impairs their vested rights. But as respondents note, those rights were not vested and were terminated by the 2005 will. There was no error.

### Substantial Evidence

Appellants contend there is no evidence to show that the 2005 document was intended to be decedent's will. They claim it does not contain "testamentary language," does not use the word will or make reference to death.[2]

■ The document is certainly not a model will. But "[n]o particular words are necessary to show a testamentary intent . . ." as long as the record demonstrates that the decedent intended the document to be his or her last will and testament. (*Estate of Wunderle* (1947) 30 Cal.2d 274, 280 [181 P.2d 874].)

Here decedent's testamentary intent is evident. The document provides that all of decedent's property will go to his children—the respondents, that the 1997 trust is revoked, that Gularte will receive "nothing," and that his children will have power of attorney "over everything."

Moreover, even if the document is ambiguous, the trial court properly admitted extrinsic evidence. (*Estate of Torregano* (1960) 54 Cal.2d 234, 246 [5 Cal.Rptr. 137, 352 P.2d 505].) That evidence confirmed decedent's testamentary intent. Meier testified that decedent told her the document was "my last will and testament," and "[t]hese are my wishes." Johns testified that decedent told him that the will represented "his final wishes."

---

[2] The parties did not raise the issue of standing; therefore, we do not discuss it. If they had, appellants still would not prevail.

█ Appellants suggest that the record does not support a finding that decedent had any intent to revoke or that he had ever executed any revocation of the 1997 will and trust. We disagree. A will may be revoked where the testator executes a subsequent inconsistent will or where he or she burns or destroys the will. (§ 6120; *Estate of Wiemer* (1962) 209 Cal.App.2d 7, 12 [25 Cal.Rptr. 693].) The 2005 will expressly and unequivocally provides that the 1997 trust was revoked. The statement in the will that his children were to receive all his property was an express revocation of the earlier 1997 will, which purported to give this property to others. In addition, Gretchen Landry, a friend of decedent's, testified that in 2001 decedent took his original copy of the 1997 will, urinated on it and then burned it. We hesitate to speculate how he accomplished the second act after the first. In any event, decedent's actions lead to the compelling conclusion he intended to revoke the 1997 will. Landry said decedent did not agree with the "contents" of the 1997 will. Appellants claim this trial testimony was not credible. But we do not decide the credibility of the witnesses; that is a matter for the trial court. (*Semas v. Bergmann* (1960) 178 Cal.App.2d 758, 762 [3 Cal.Rptr. 277].) The evidence is sufficient.

We have reviewed appellants' remaining contentions and conclude they have not shown any error.

The judgment is affirmed. Costs on appeal are awarded in favor of respondents.

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied April 4, 2011, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 18, 2011, S192197.