Filed 9/14/22  Neyama v. Sugishita CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GEORGE NEYAMA, as Trustee, etc., et al., | H048190 (Santa Clara County Super. Ct. No. 1-16-PR-178371) |
| Plaintiffs and Respondents, | |
| v. | |
| KATHY SUGISHITA, | |
| Defendant and Appellant. | |

Appellant Kathy Sugishita (Kathy[1]) challenges the trial court's order granting respondents' request that Kathy be disinherited through application of a trust's no contest provision after Kathy filed an elder abuse civil complaint seeking cancellation of two amendments to the trust.  The trial court found Kathy's civil elder abuse action was a direct contest to the trust that lacked probable cause (and thus fell within the terms of the no contest clause), because it was filed outside the 120-day statutory period set forth in Probate Code section 16061.8.[2]

On appeal, Kathy contends her elder abuse complaint, which sought both cancellation of the two trust amendments and damages, was not a "direct contest" and did

---

[1] For clarity, we refer to family members by their first names.

[2] Unspecified statutory references are to the Probate Code.

not lack probable cause.  She maintains that the 120-day period did not apply and instead the four-year limitations period for elder abuse actions provided the applicable statute of limitations.  She also contends that the trial court erroneously failed to rule on the trustees' accounting petition to which she objected and to grant her petition to remove the trustees.  We reject Kathy's contentions and affirm the trial court's order.

## I.  FACTS AND PROCEDURAL BACKGROUND

Janet and Flyer Tabata created the Tabata Trust in 1986 (the 1986 Trust).  The 1986 Trust named Janet and Flyer as Trustors and Trustees.  The 1986 Trust provided that, upon the death of the first trustor, the trustee was to divide the estate into three trusts:  The Survivor's Trust, the Marital Trust, and the Family Trust.  The Survivor's Trust was to contain the surviving trustor's community and separate property.  The value of the assets placed in the Family Trust was defined by "the maximum sum which can be allocated to a trust which does not qualify for the federal estate tax marital deduction to any extent, without producing any federal estate tax."  The Marital Trust was to contain "the balance of the Trust Estate."

The 1986 Trust provided that the surviving trustor would retain the power to amend the Survivor's Trust, but the Marital Trust and the Family Trust would become irrevocable upon the death of the first trustor and could not be amended by the surviving trustor.  The surviving trustor retained the power to dispose of the Survivor's Trust upon the surviving trustor's death.  Upon the surviving trustor's death, the Family Trust and the Marital Trust were to be added together and distributed according to the 1986 Trust's distribution provisions for the Family Trust.

The 1986 Trust provided that the Family Trust's assets were to be utilized for the benefit of Susan Tabata, the trustors' daughter, until Susan's death and then distributed in specified percentages to certain people and entities, including 20 percent to Eva Tabata (Flyer's sister), 10 percent to Anne Sugishita (Flyer's sister and Kathy's mother-in-law), and 10 percent to Dorothy Nakamura (Janet's sister).  Kathy was not a beneficiary of the

1986 Trust. If any of the beneficiaries predeceased the surviving trustor, their shares would be divided among the other beneficiaries. The 1986 Trust designated Eva and Anne as the successor trustees. It also provided that the surviving spouse "shall have the power to replace the Trustee named herein [i.e., the surviving spouse] with any designated successor trustee named above [(i.e., Eva or Anne)] or with a successor trustee which shall be a bank or trust company."

The 1986 Trust contained a no contest clause: "If any beneficiary of this Trust shall contest in any court any of the provisions of this instrument, or the validity of the Living Trust, then the beneficial interest herein of any such person shall thereupon terminate, and the portions of the income and principal of the Trust Estate otherwise provided to be paid to such beneficiary shall instead be paid and distributed as though such person had died without issue before becoming entitled to receive income or any portion of the principal of the Trust Estate."

In June 1992, Flyer and Janet executed an amendment to the 1986 Trust, which changed some of the percentages, including reducing both Anne's and Dorothy's shares to 9 percent each and providing that their shares would go to their "then living issue" if they did not survive Susan.

In April 1993, Flyer and Janet executed another amendment, which added Kathy as a third successor trustee (First Amendment).[3] The 1993 amendment also incorporated most of the changes that had been made in the 1992 amendment, including the provision that Anne's share would go to her "then living issue" if she did not survive Susan. The 1993 amendment substituted respondent Jean Neyama, Janet's niece, for Dorothy Nakamura, Janet's sister.

---

[3] Both the 1992 and 1993 amendments were entitled "FIRST AMENDMENT." Since the 1993 amendment incorporated all of the significant changes made in the 1992 amendment, we refer to the 1993 amendment as the First Amendment.

3

In May 1995, Flyer and Janet again amended the 1986 Trust, altering the percentages and beneficiaries in ways that are not relevant here (Second Amendment). The 1992, 1993, and 1995 trust amendments did not contain no contest clauses.

Flyer died in April 2000. In 2001, the attorney for Flyer's estate informed Janet that half of all assets would be placed in the Survivor's Trust, assets worth $675,000 would be placed in the Family Trust, and the remainder would be placed in the Marital Trust. He told her that she could "pick and choose" which assets she wanted to place in each trust. Since the entire estate was valued at $6 million at the time of Flyer's death, the Survivor's Trust was supposed to be funded with $3 million in assets. Janet's financial advisors performed the actual allocation. However, the allocations were apparently not accurately executed. The Survivor's Trust received significantly more than did the other two trusts, although under the terms of the 1986 Trust the Survivor's Trust should have been equal in value to the total value of the other two trusts.[4]

In March 2003, Janet executed an amendment to the 1986 Trust (Third Amendment). She asserted she had the authority to revoke the previous designations of the successor trustees for all three trusts (the Survivor's Trust, the Family Trust and the Marital Trust), and she named the same three successor trustees (Eva, Anne, and Kathy) plus Kathy's husband, Tim Sugishita, who was Anne's son.[5] The 2003 amendment designated somewhat different beneficiaries and percentages for the Survivor's Trust than

_____

[4] It was much later determined that approximately $830,000 that was allocated to the Survivor's Trust as of Flyer's death should have been allocated to the Marital Trust. By 2016, the disparity had grown dramatically, and the Survivor's Trust contained the bulk of the Tabatas' estate. However, the certified public accountant handling the trust administration after Janet's death subsequently corrected the allocation to equalize the trusts based on the values as of the time of Janet's death. This discrepancy came to be a key component of Kathy's concerns about the Neyamas' trust administration.

[5] As described above, according to the terms of the 1986 Trust, the Marital and Family Trusts became irrevocable upon the death of the first trustor (here, Flyer) and could not be thereafter amended by the surviving spouse. The 1986 Trust granted the surviving spouse limited authority to appoint a designated successor trustee.

had been designated in the 1989 Trust. Anne was to receive 6 percent. If Anne did not survive Susan, her share was to go to her then living issue. Jean was to receive 17 percent, and if she did not survive Susan, her husband, respondent George Neyama, was to receive half of that amount. Kathy and Tim were to receive 10 percent, and if one of them did not survive Susan then it would all go to the other. The 2003 amendment also reaffirmed the 1986 Trust and the 1993 and 1995 amendments. It did not contain a no contest clause.

In 2011, Janet executed another amendment to the 1986 Trust (Fourth Amendment). The 2011 amendment revoked the March 2003 amendment and exercised Janet's power of appointment with respect to the Survivor's Trust. The 2011 amendment again purported to amend the designation of successor trustees and named the same four successor trustees as had been named in the 2003 amendment, including Kathy and Tim. The 2011 amendment altered the beneficiaries and percentages for distribution of the Survivor's Trust. Jean and George were each to receive 7.87 percent. Kathy and Tim were to receive a total of 11.14 percent, which was to go to the survivor if one of them predeceased Janet.[6]

The 2011 amendment contained a no contest clause. It stated, "If any beneficiary under this document or the document it amends singly or in conjunction with any other person or persons files a direct contest without probable cause that alleges the invalidity of (a) this document, the document it amends, or any of their terms or (b) any will or codicil of the Settler or any of their terms, which is in existence on the date this document is executed, then the right of that beneficiary to take any interest given to the beneficiary by this document or the document it amends shall be void, and any interest to which the beneficiary would have been entitled shall pass as if the beneficiary had predeceased the Settlor without descendants. As used in this section the terms 'direct contest' and

---

[6] Susan, Janet and Flyer's daughter, died on August 15, 2003.

5

'probable cause' shall have the meanings given in California Probate Code [s]ections 21310 and 21311, or any successor statute."

Janet executed another trust amendment in September 2012 (Fifth Amendment). The Fifth Amendment purported to revoke the prior designations of successor trustees and to replace them with Jean and George Neyama (the Neyamas).[7] It contained a no contest clause identical to the one in the 2011 amendment. Janet appointed by durable power of attorney the Neyamas as her attorneys in fact, and executed a pour-over will that bequeathed her estate to the 1986 Trust.[8]

In December 2012, Janet executed the final amendment to the 1986 Trust (Sixth Amendment), which also contained the no contest clause used in the Fifth Amendment. The Sixth Amendment permitted Janet to delegate her duties and powers as trustee. Although Janet did not die until July 2015, she delegated her duties and powers under the 1986 Trust to the Neyamas in December 2012. Kathy was provided copies of the Fifth and Sixth Amendments prior to Janet's death.

In February 2015, an attorney acting for Kathy (hereafter Kathy's initial attorney) contacted the Neyamas and informed them that Kathy would be assuming her role as successor trustee. In April 2015, the Neyamas' attorney responded that the Neyamas were trustees of all of the trusts that were part of the 1986 Trust, including the Survivor's Trust, the Marital Trust, and the Family Trust. Kathy's initial attorney stated that "Tim and Kathy Sugishita do not wish to contest any provisions of the Tabata trusts and their amendments."

---

[7] As described above, Jean is Janet's niece and George is Jean's husband.

[8] A pour-over will operates in conjunction with a decedent's trust. The pour-over will causes any portion of the decedent's estate not already included in the trust to become a trust asset, and to be distributed to the trust beneficiaries on the terms provided by the trust. (See, e.g., *Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, disapproved on other grounds in *Bernard v. Foley* (2006) 39 Cal.4th 794, 816, fn. 14.)

6

In May 2015, Kathy's initial attorney wrote to the Neyamas' attorney and requested reimbursement for the expenses that Kathy had incurred when she was acting under the belief that she was the successor trustee of the 1986 Trust. Kathy's initial attorney's letter requested that "Jean and George Neyama, as successor trustees of [the 1986 Trust], as amended, reimburse" these costs, which totaled $23,493.46. Although the letter questioned whether Janet had had the power to change the trustee designation for the Marital Trust and the Family Trust, the letter expressly stated that "Tim and Kathy Sugishita do not want to test the no-contest clause of the instruments in any way that could impair their beneficial interests, and do not do so by way of this request." In June 2015, the Neyamas sent a check for the requested amount to Kathy's initial attorney, which the attorney deposited.

Janet died on July 23, 2015, at the age of 92. On September 17, 2015, the Neyamas sent a section 16061.7 notice to Kathy and Tim and the other beneficiaries of the 1986 Trust.[9] This notice identified each of the amendments to the 1986 Trust by date and named the Neyamas as the trustees of the 1986 Trust. The notice also informed the beneficiaries of their right to receive a copy of the trust terms upon request and apprised them that they could not bring an action to contest the trust more than 120 days after the notice or 60 days after receiving a requested copy of the trust terms. On January 6, 2016, Kathy's initial attorney requested a complete copy of the trust terms, which he received that day.

In May 2016, Kathy retained a new attorney (hereafter Kathy's second attorney). Kathy's second attorney maintained that Kathy had not authorized her initial attorney's statements to the Neyamas' attorney.

In July 2016, the Neyamas filed in the probate court a petition for an order settling account and approving acts of trustees, instructions, and partial distribution (the

---

[9] A section 16061.7 notice that satisfies the statutory requirements triggers the statutory 120-day period for a trust contest.

7

accounting petition). The accounting petition sought, among other objectives, to accomplish an initial distribution of 50 percent of the three trusts to the beneficiaries.

On August 2, 2016, Kathy filed a civil complaint for financial elder abuse and cancellation of instruments. Kathy asserted she had standing to bring this action on Janet's behalf as the trustee of the 1986 Trust, the personal representative of Janet, and a beneficiary of the 1986 Trust. She alleged that, from 2007 to 2012, the Neyamas isolated Janet and took over Janet's financial affairs for their own benefit. Kathy alleged that, by doing so, they persuaded Janet to execute both the Fifth Amendment that made the Neyamas her successor trustees and the Sixth Amendment that permitted Janet to delegate her authority as trustee to them. Kathy alleged that the Neyamas had persuaded Janet by using undue influence. Kathy's complaint sought cancellation of the Fifth and Sixth Amendments and damages.

On August 23, 2016, Kathy filed objections to the accounting petition filed by the Neyamas. She asserted that the Neyamas lacked standing to file the petition because they "are not now, and have never been, the successor trustees of the Trust." Kathy's objections included her challenge to the validity of the "purported Fifth Amendment to the Trust." She claimed that the Neyamas had "induce[d]" Janet to sign the Fifth Amendment "by undue influence" and, even if they had not, that the Neyamas could not be trustees of the Marital Trust and the Family Trust because those trusts became irrevocable when Flyer died, prior to the Fifth Amendment.

On August 23, 2016, the Neyamas filed a supplemental petition seeking a finding that Kathy's civil complaint was a "time-barred" "contest" that violated "the no contest clause of the Trust." The Neyamas' supplemental petition relied on the no contest clauses in the Fifth and Sixth Amendments. The Neyamas claimed that Kathy had thereby forfeited her rights under the trust.

8

In September 2016, Kathy filed in the probate court a petition to construe a trust instrument under section 17200, subdivision (b)(1). She asked the court to construe the 1986 Trust so that she became the "sole trustee" upon Janet's death.[10]

In October 2017, Kathy retained her current appellate counsel to represent her in place of her second attorney. In December 2017, Kathy filed in the probate court a petition for removal and replacement of the Neyamas as trustees. She asserted that the Neyamas should be removed under section 15642, subdivision (b) due to "breach of trust, failure to preserve trust assets, conflict with trust beneficiaries and appropriation of trust assets to their own use."[11] Kathy asked that the Neyamas be replaced with "an independent fiduciary."

In October 2018, the Neyamas argued to the trial court that it should first resolve the applicability of the statute of limitations and the no contest clause before considering any other issues.[12] Their trial brief asserted that Kathy's claims were time-barred by the 120-day period set forth in section 16061.8, her civil complaint and petition were untimely, and her actions violated the trust's no contest clause. Kathy's trial brief argued that the applicable limitations period was the four-year period for elder abuse claims under Welfare and Institutions Code section 15657.7, not the 120-day period for contesting a trust. The trial court deferred resolution of those issues until after trial on the accounting petition.

At the April 2019 trial on the accounting petition, Kathy testified that she filed the elder abuse complaint because the accounting petition revealed that "the allocations to the

---

[10] Apparently at the Neyamas' request, Kathy's elder abuse action was consolidated on October 4, 2016, with the pending trust action.

[11] Section 15642 provides that "[a] trustee may be removed . . . on petition of . . . a beneficiary under Section 17200" "[w]here the trustee has committed a breach of trust" or "[f]or other good cause." (§ 15642, subds. (a) & (b).)

[12] The Neyamas' March 2018 summary judgment motion based on the statute of limitations had been denied in May 2018 on the ground that they had failed to meet their burden.

9

various trusts [were] way off." She did not file her complaint earlier because she did not then know of the allocations and had been unable to acquire information from the Neyamas. Kathy admitted that she knew before Janet's death about the Fifth and Sixth Amendments to the 1986 Trust. The court made a tentative finding that Kathy's civil complaint was time-barred by the 120-day limitations period.

In October 2019, the trial court issued a tentative decision addressing only the accounting petition and denying it. The tentative decision did not address the statute of limitations or no contest clause issues.

In November 2019, the Neyamas filed an amended petition for order settling revised and final account, approving acts of trustees, and for distribution (amended accounting petition). The amended petition sought to resolve the problems identified by the court in its tentative decision on the original accounting petition by reallocating the assets in the subtrusts to equalize the trusts as of the date of Janet's death. In February 2020, Kathy filed objections to the amended petition and renewed her request for removal and replacement of the Neyamas as trustees.[13] The Neyamas responded that they had no duty to account at all.[14]

On February 24, 2020, the trial court issued an order granting the Neyamas' request to disinherit Kathy and denied it without prejudice as to Tim.[15] The court found that the no contest clauses in the Fifth and Sixth Amendments applied to Kathy's civil complaint. It concluded that Kathy's civil complaint was a direct contest to those

---

[13] Kathy attached to her objections letters from other beneficiaries objecting to the amended accounting petition. However, no other beneficiary filed any objections with the court or appeared before the court to object to the amended petition. Tim explicitly stated that he did not object to the amended petition.

[14] "A trustee of a living trust created by an instrument executed before July 1, 1987, is not subject to the duty to account provided by subdivision (a)." (§ 16062, subd. (b).)

[15] Tim is not a party to this appeal.

10

amendments that lacked probable cause because it was brought after the expiration of the section 16061.8 limitations period.

At a subsequent February 2020 hearing on the Neyamas' amended accounting petition, the Neyamas explained their intended actions. "[T]he Neyamas are going to distribute the trust estate pro rata as set forth in the [amended] petition. It is true that by doing that without Court approval of the petition, the accounting or anything else they run the risk that any of these 30 beneficiaries, except, of course, Kathy, can come back in the next two years and ten-and-a-half months and file any action they want to against them for anything involved in the accounting." "[The Neyamas] are not asking any longer for any order by your court blessing their accounting in whole or in part. They will take the risk of any other beneficiary filing an objection and a lawsuit." The Neyamas informed the court that they intended to withdraw the amended petition.[16] The court emphasized that its tentative decision on the original accounting petition was "nonbinding," and "the Neyamas [] remain free to act as they wish."

On March 11, 2020, Kathy filed a request for a statement of decision. On March 17, 2020, the trial court rejected Kathy's request for a statement of decision and issued an amended order on the no contest issue. The court first found that the amended accounting petition "effectively superseded" the July 2016 accounting petition, which had been the subject of the April 2019 trial. The court concluded that "[a]sset allocation changes" had "rendered moot" the court's tentative decision on the July 2016 accounting petition.[17] As to the supplemental petition, the court found that Kathy's civil complaint seeking to cancel the Fifth and Sixth Amendments to the trust, which contained no contest clauses, was a "direct contest." Kathy's cancellation causes of action lacked

---

[16] At the February 2020 hearing, the court indicated that "to the extent that the application of the no contest clause as to [Kathy] is the lynchpin for the Neyamas' proposed withdrawal of this petition," Kathy was "entitled to be heard as far as her objections" to the court's February 24, 2020 order.

[17] The court noted that it had reserved ruling on Kathy's removal petition.

11

probable cause because she did not bring them within the 120-day period specified in section 16061.8.  The court rejected Kathy's claim that the four-year elder abuse statute of limitations applied instead of the 120-day trust contest statute of limitations.  The court found that the elder abuse statute of limitations applied only to actions for damages, while Kathy's complaint sought cancellation of the two trust amendments in addition to damages.[18]  Kathy timely filed a notice of appeal challenging the trial court's March 17 order.

## II.  DISCUSSION

The Fifth and Sixth Amendments contain identical no contest clauses:  "If any beneficiary under this document or the document it amends . . . files a direct contest without probable cause that alleges the invalidity of (a) this document, the document it amends, or any of their terms . . . then the right of that beneficiary to take any interest given to the beneficiary by this document or the document it amends shall be void, and any interest to which the beneficiary would have been entitled shall pass as if the beneficiary had predeceased the Settlor without descendants."

Kathy contends on appeal that the trial court erred in finding her civil complaint to be a "direct contest" lacking in "probable cause."  She claims the four-year elder abuse statute of limitations applies to her civil complaint, rather than section 16061.8's 120-day limitations period.  Kathy also maintains that the trial court abused its discretion in failing to rule on the accounting petition and by not removing the Neyamas as trustees.

A.  *Statute of Limitations*

The four-year elder abuse statute of limitations applies only to "[a]n action for damages."  (Welf. & Inst. Code, § 15657.7.)  "An action for damages pursuant to

---

[18] The court also found that Kathy waived her right to contest the Fifth and Sixth Amendments through the statements of her initial attorney, the request for compensation, and acceptance of compensation.  Because, as explained *post,* we decide Kathy's cancellation causes of action lacked probable cause because they were untimely filed, we need not reach this alternative basis for the trial court's decision.

12

[s]ections 15657.5 and 15657.6 for financial abuse of an elder or dependent adult, as defined in [s]ection 15610.30, shall be commenced within four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse." (*Ibid*.)

Section 16061.8's 120-day limitations period applies to an "action to contest [a] trust." (§ 16061.8.) "No person upon whom the notification by the trustee is served pursuant to this chapter . . . may bring an action to contest the trust more than 120 days from the date the notification by the trustee is served upon him or her, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to [s]ection 1215 to him or her during that 120-day period, whichever is later." (*Ibid*.)

Kathy's civil complaint contained three causes of action. The first cause of action sought damages for elder abuse. The second and third causes of action sought cancellation of the Fifth and Sixth Amendments to the 1986 Trust on the ground that they were "void" due to financial elder abuse. While the four-year elder abuse statute of limitations may have applied to her first cause of action for damages, it could not apply to her second and third causes of action for cancellation of the trust amendments as those causes of action did not seek damages.

Kathy argues that section 16061.8 did not apply to her cancellation causes of action because those causes of action were not actions "to contest the trust" as her sole purpose was to "stop ongoing breaches of duty." "In determining whether [an action] constitutes an action to contest the trust within the purview of section 16061.8, we look to the substance of that petition and its 'practical effect.' We are not bound by its label." (*Estate of Stoker* (2011) 193 Cal.App.4th 236, 241 (*Stoker*).)

Kathy's cancellation causes of action challenged the *validity* of two trust amendments. " '[T]erms of the trust,' " as used in section 16061.8, "includes . . . amendments." (§ 16060.5.) By challenging the validity of " 'terms of the trust,' " (§ 16061.8) she ineluctably contested the trust. An action to *cancel* a trust

13

amendment is definitionally an action to contest a trust. The " 'practical effect' " (*Stoker*, *supra*, 193 Cal.App.4th at p. 241) of Kathy's cancellation causes of action was to contest the trust amendments. Accordingly, her cancellation causes of action, which were filed almost a year after the 120-day period commenced, were barred by section 16061.8.

Kathy claims that her cancellation causes of action were instead subject to the elder abuse statute of limitations because an elder abuse action may seek remedies other than damages. (Welf. & Inst. Code, § 15657.5, subd. (a) [permitting the recovery of "damages and all other remedies otherwise provided by law" in an action for financial elder abuse].) But the four-year statute of limitations upon which she relies is restricted by the text of the statute to actions for "damages" and does not apply to any "other remedies." (Welf. & Inst. Code, § 15657.7.)

Kathy argues that the four-year limitations period should be "interpreted" to extend to other remedies, but this argument falters on the plain language of Welfare and Institutions Code section 15657.7, which expressly limits its reach to "[a]n action for damages." (Welf. & Inst. Code, § 15657.7.) "This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. This court is limited to interpreting the statute, and such interpretation must be based on the language used." (*Seaboard Acceptance Corp. v. Shay* (1931) 214 Cal. 361, 365.) Here, Welfare and Institutions Code section 15657.7's language provides for a four-year limitations period only for "[a]n action for damages." (Welf. & Inst. Code, § 15657.7.) We may not look outside the statutory language to extend its reach beyond its restrictions.

Kathy maintains that she could not have brought her cancellation causes of action any earlier because she was not aware of the Neyamas' alleged financial improprieties until they filed the accounting petition, long after the 120-day period expired. But Kathy received copies of the Fifth and Sixth Amendments even before Janet died, so she had the opportunity to challenge their validity within the 120-day period. And once the alleged

14

financial improprieties came to her attention, she was not precluded from seeking appropriate remedies other than cancellation of the trust amendments by objecting to the accounting petition and seeking the removal of the Neyamas as trustees, as she did. What she could not do, given the timing of her challenge, was to bring an action to contest the trust by seeking cancellation of these two trust amendments. We conclude that Kathy's cancellation causes of action were time-barred by section 16061.8's 120-day limitations period.[19]

B. *No Contest Clause*

Kathy challenges the trial court's finding that her cancellation causes of action were a "direct contest" without "probable cause" within the meaning of the no contest clauses in the Fifth and Sixth Amendments. As described above, the no contest clauses of the Fifth and Sixth Amendments were triggered by the filing of a "direct contest" without "probable cause." The no contest clauses further provide, "As used in this section the terms 'direct contest' and 'probable cause' shall have the meanings given in California Probate Code [s]ections 21310 and 21311, or any successor statute."[20]

Kathy maintains that her cancellation causes of action were not a "direct contest." Section 21310 defines " '[d]irect contest' " as "a contest that alleges the invalidity of a

---

[19] We acknowledge that Kathy's *damages* cause of action in her civil complaint was not barred by section 16061.8's limitations period, but it nevertheless lacked merit. That cause of action could not succeed on its own because, without cancellation of the Fifth and Sixth Amendments, Kathy lacked standing to bring an elder abuse action on Janet's behalf. "[A]fter the death of the elder or dependent adult, the right to commence or maintain an action shall pass to the personal representative of the decedent." (Welf. & Inst. Code, § 15657.3, subd. (d)(1).) Since the Fifth and Sixth Amendments designated the Neyamas as Janet's successor trustees and therefore also her personal representatives, Kathy lacked any basis for a claim that she had standing to bring an action for elder abuse on Janet's behalf. As a result, Kathy's civil complaint could not prevail. She does not claim otherwise on appeal.

[20] Kathy's cancellation causes of action, by alleging that the Fifth and Sixth Amendments were "void," clearly "allege[d] the invalidity" of those amendments within the meaning of the no contest clauses as required by section 21310. (§ 21310, subd. (b).) Kathy does not argue otherwise.

protected instrument or one or more of its terms, based on one or more of the following grounds: [¶] . . . [¶] (3) Lack of capacity. [¶] (4) Menace, duress, fraud, or undue influence." (§ 21310, subd. (b).)

Kathy's cancellation causes of action alleged that the Neyamas had "isolate[d]" Janet when she was physically and mentally vulnerable in order to make her dependent on them so that they could "take over her financial affairs to their financial benefit." These causes of action also alleged that the Neyamas used Janet's isolation and dependence on them to "take money from Janet" and "persuade []" Janet to take actions that benefitted them. Notably, Kathy's cancellation causes of action alleged that the Neyamas "persuaded Janet Tabata against her free will and/or without Janet Tabata knowing the meaning of the document" to sign the Fifth and Sixth Amendments. And the cancellation causes of action alleged that the Neyamas then used those amendments to "t[ake] over the personal and financial affairs and manipulated the assets of the Tabata Living Trust to their financial benefit."

Although these allegations quite plainly alleged that the Fifth and Sixth Amendments were procured by undue influence, Kathy claims that her cancellation causes of action were "based upon elder abuse which is not enumerated in Probate Code section 21310." She provides no further explanation, and we decide they fall squarely within the definition set out in section 21310 of an assertion of invalidity based on duress or undue influence. The cancellation causes of action alleged that the Neyamas persuaded Janet, while she was mentally and physically vulnerable and dependent on them, to execute the Fifth and Sixth Amendments "against her free will" so that they could take financial advantage of her. We reject Kathy's claim that her cancellation causes of action were not a direct contest within the meaning of section 21310, subdivision (b).

Kathy argues that even if her cancellation causes of action were a direct contest, they were not filed without probable cause within the meaning of section 21311.

16

"[P]robable cause exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery." (§ 21311, subd. (b).) She repeats her claim that her cancellation causes of action were not time-barred because the four-year elder abuse statute of limitations applied rather than section 16061.8's 120-day limitations period. We have already considered and rejected this claim.

Kathy also suggests that a "time[-]barred claim" is not brought without probable cause. She notes that the statute of limitations does not concern "the merits of the claim" and argues, without any further explanation, that a reasonable person could " 'believe that there is a reasonable likelihood that the requested relief will be granted' " on a time-barred claim. But we fail to see how a reasonable person could believe that he or she is likely to prevail on a time-barred claim. We reject Kathy's argument that she could reasonably believe she would prevail on her claim.

C.    *Did Trial Court Abuse Its Discretion in Failing to Rule on the Original Accounting Petition?*

The Neyamas withdrew the original accounting petition after the trial court issued a tentative ruling denying it but before the trial court issued a final decision on the petition. The Neyamas subsequently filed an amended accounting petition. The trial court never entered a final ruling on the original accounting petition, and the Neyamas did not seek a ruling on the amended accounting petition after the court found that Kathy was no longer a trust beneficiary due to the application of the no contest clause.

Kathy argues that the trial court abused its discretion in failing to rule on either accounting petition, but she lacks standing to pursue this argument because she is no longer a beneficiary of the trust. No other trust beneficiary objected to either accounting petition. In any case, since the Neyamas were not obligated to account to the court, they were entitled to withdraw their accounting petitions before the trial court entered a final

17

ruling on either of them. (§ 16062, subd. (b) ["A trustee of a living trust created by an instrument executed before July 1, 1987, is not subject to the duty to account provided by subdivision (a)."].)

Kathy's reliance on *Dunlap v. Mayer* (2021) 63 Cal.App.5th 419 is misplaced. In *Dunlap*, the trial court dismissed a trust beneficiary's petition requesting an accounting without an evidentiary hearing to resolve contested facts after the court-appointed trustee of the trust denied that she was the trustee. (*Id*. at pp. 422–423.) That case does not support Kathy's contention that the trial court here abused its discretion in failing to rule on a petition that had been withdrawn by the petitioner where the only objector was not a beneficiary. She also relies on *Gregge v. Hugill* (2016) 1 Cal.App.5th 561, which she characterizes as involving "substantially similar facts" to the case before us. We disagree. In *Gregge*, a *beneficiary* challenged a trust amendment on grounds of undue influence, and this court found that a disclaimer by the person who benefitted from the trust amendment did not destroy the beneficiary's standing to challenge the validity of the trust amendment on undue influence grounds. (*Id*. at p. 571.) Here, Kathy had been disqualified as a beneficiary during the pendency of the accounting petitions. As the Neyamas point out, the court was under no obligation to rule on the petitions after Kathy ceased to be a beneficiary, as no beneficiary was challenging the Neyamas' petitions. We perceive no abuse of discretion by the trial court in declining to rule on the accounting petitions.

D. *Did the Trial Court Err in Failing to Remove the Neyamas as Trustees?*

Kathy asserts that the trial court erred by failing to grant her petition to remove the Neyamas as trustees. A removal petition may be brought only by "a settlor, cotrustee, or beneficiary." (§ 15642, subd. (a).) We agree with the Neyamas that the court had no obligation to rule on Kathy's petition after she ceased to be a beneficiary and lost any standing to seek the removal of the Neyamas as trustees. Lacking a statutory basis for

18

standing to challenge the Neyamas' status as trustees, Kathy has not demonstrated error in the trial court's ruling denying her petition.

### III. DISPOSITION

The trial court's March 17, 2020 order is affirmed. The Neyamas shall recover their appellate costs.

_____
                  Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H048190**
*Neyama et al. v. Sugishita*